OPINION
 

 Per Curiam:
 

 Petitioners applied to the Douglas County Community Development Department for a master plan amendment and zon
 
 *585
 
 ing change to real property. After approval by the Douglas County Planning Commission, the Douglas County Board of Commissioners voted three-to-two in favor of the master plan amendment. However, the three-to-two vote was deemed a denial of the master plan amendment under Douglas County Development Code § 20.608.070, which requires a super-majority vote to approve any master plan amendment. For the reasons discussed herein, we conclude that the petitioners appropriately seek relief by way of a petition for a writ of mandamus and that Douglas County Development Code § 20.608.070 is invalid because it conflicts with NRS Chapter 278. We therefore grant this petition.
 

 FACTS
 

 While acting as the agent and representative for petitioner Herbig Properties Limited (“Herbig”), petitioner Roger Falcke (“Falcke”) applied to the Douglas County Community Development Department in June 1999 for a master plan amendment and zoning change to real property owned by Herbig. The property is located between U.S. Highway 395 and Waterloo Lane in Douglas County and is comprised of thirty and fifty-five one-hundredths (30.55) acres. Specifically, Falcke’s application sought to change the property’s master plan designation from 30.55 acres of agriculture to 22.87 acres of public facilities and 7.68 acres of commercial. Falcke’s application also sought a zoning change from all agriculture to 22.87 acres of public facilities and 7.68 acres of neighborhood commercial.
 

 On August 17, 1999, the Douglas County Planning Commission (“the Planning Commission”) recommended approval of the master plan amendment with a five-to-two vote in favor of the amendment. Under Douglas County Development Code (“DCDC”) § 20.608.030, a two-thirds vote is required by the Planning Commission to approve a master plan amendment. The Planning Commission also voted to recommend approval of the zoning change with a four-to-three vote in favor of the zoning change, which requires only a simple majority vote under DCDC § 20.610.020(D).
 

 On September 2, 1999, the Douglas County Board of Commissioners (“the Board”) met and considered the master plan amendment and the zoning change. After a motion was made to approve the requested master plan amendment, the Board voted three-to-two in favor of the master plan amendment. However, under DCDC § 20.608.070, a super-majority
 
 [1]
 
 vote of the Board
 
 *586
 
 is required to approve any master plan amendment. Therefore, the Board’s vote in favor of the master plan amendment was deemed a denial. Because the Board did not approve the master plan amendment, it appears that the Board never reached the second issue of the zoning change.
 

 After a rehearing held on October 7, 1999, the Board again voted three-to-two in favor of the master plan amendment, which was again deemed a denial under DCDC § 20.608.070. Subsequently, Falcke and Herbig filed in this court an original petition for a writ of mandamus challenging the Board’s decision.
 

 DISCUSSION
 

 As a threshold issue, we must first consider whether a petition for a writ of mandamus is the proper method to challenge the Board’s decision. Falcke argues that a writ of mandamus is an appropriate remedy even though he could have sought relief through a declaratory judgment under NRS 30.040. We agree.
 

 This court may issue a writ of mandamus in order ‘ ‘to compel the performance of an act which the law especially enjoins as a duty resulting from an office, trust or station.” NRS 34.160. Generally, a writ of mandamus may issue only when there is no plain, speedy, and adequate remedy at law.
 
 See
 
 NRS 34.170. However, where circumstances reveal urgency or strong necessity, this court may grant extraordinary relief.
 
 See
 
 Jeep Corp. v. District Court, 98 Nev. 440, 443, 652 P.2d 1183, 1185 (1982). Moreover, “where an important issue of law needs clarification and public policy is served by this court’s invocation of its original jurisdiction, our consideration of a petition for extraordinary relief may be justified.” Business Computer Rentals v. State Treas., 114 Nev. 63, 67, 953 P.2d 13, 15 (1998).
 

 In the present case, the Board correctly points out that Falcke could have sought relief through a declaratory judgment under NRS 30.040. NRS 30.040 provides that any person whose rights are affected by a statute or ordinance ‘ ‘may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder.” Indeed, Falcke does challenge the validity of DCDC § 20.608.070.
 

 We conclude that the conflict presented by this petition between NRS Chapter 278 and DCDC § 20.608.070 is an urgent and important issue of law, which requires clarification by this court. As the Board acknowledges in its opposition papers, land use and development are important public policy issues confronting
 
 *587
 
 Douglas County as well as other counties in Nevada. Here, public policy would be best served by reaching the merits of the instant petition in order to provide guidance to Douglas County, and other counties, in properly following the dictates of NRS Chapter 278. Consequently, we conclude that our consideration of this petition on its merits is justified under these circumstances.
 
 [2]
 

 Falcke next argues that DCDC § 20.608.070 conflicts with NRS 278.220 and is therefore invalid. We agree.
 

 Under NRS 278.020, the legislature granted counties the authority to regulate and restrict the improvement of land for the purpose of promoting health, safety, morals, or the general welfare of the community. Pursuant to this authority, the Planning Commission is required to prepare and enact a long-term master plan for the development of the county.
 
 See
 
 NRS 278.150. In 1996, the Board adopted a master plan, which can be amended subject to approval by the Planning Commission and the Board.
 

 NRS 278.210(2) provides that “[t]he adoption of the master plan, or of any amendment, extension or addition thereof, shall be by resolution of the [planning] commission carried by the affirmative votes of not less than two-thirds of the total membership of the commission.” DCDC § 20.608.030(A) echoes NRS 278.210(2) by stating that “[t]he [planning] commission may approve a master plan amendment only upon the affirmative vote of a two-thirds majority of the total membership of the commission.” The Planning Commission’s recommendation is then forwarded to the Board for consideration.
 
 See
 
 NRS 278.210(4).
 

 NRS 278.220(1) states that “[u]pon receipt of a certified copy of the master plan, or of any part thereof, as adopted by the planning commission, the [Board] may adopt such parts thereof as
 
 *588
 
 may practicably be applied to the development of the city, county or region for a reasonable period of time next ensuing.’ ’ Nothing in NRS 278.220 requires a two-thirds or super-majority vote by the Board to approve a master plan amendment. Indeed, NRS 278.220 is silent on the issue. However, DCDC § 20.608.070(A) states that “[o]nly upon the affirmative vote of a super-majority of the total membership and concurrence by the planning commission shall the board approve a master plan amendment.”
 

 The question of whether DCDC § 20.608.070 conflicts with NRS 278.220 by requiring a super-majority vote to approve a master plan amendment is an issue of first impression in Nevada. As a preliminary matter, it is clear that counties are legislative subdivisions of the state.
 
 See
 
 Nev. Const. art. 4, § 25. Because counties obtain their authority from the legislature, county ordinances are subordinate to statutes if the two conflict.
 
 See
 
 Lamb v. Mirin, 90 Nev. 329, 332-33, 526 P.2d 80, 82 (1974).
 

 Additionally, “[i]t is well settled in Nevada that words in a statute should be given their plain meaning unless this violates the spirit of the act.” McKay v. Bd. of Supervisors, 102 Nev. 644, 648, 730 P.2d 438, 440 (1986). “ ‘Where the language of a statute is plain and unambiguous . . . there is no room for construction, and the courts are not permitted to search for its meaning beyond the statute itself.’ ” Charlie Brown Constr. Co. v. Boulder City, 106 Nev. 497, 503, 797 P.2d 946, 949 (1990),
 
 overruled on other grounds by
 
 Calloway v. City of Reno, 116 Nev. 250, 993 P2d 1259 (2000) (quoting In re Walters’ Estate, 60 Nev. 172, 183-84, 104 P.2d 968, 973 (1940)). However, “where a statute is susceptible to more than one interpretation it should be construed ‘in line with what reason and public policy would indicate the legislature intended.’” State, Dep’t of Mtr. Vehicles v. Lovett, 110 Nev. 473, 477, 874 P.2d 1247, 1250 (1994) (quoting State, Dep’t Mtr. Vehicles v. Vezeris, 102 Nev. 232, 236, 720 P.2d 1208, 1211 (1986)).
 

 In an attempt to justify the deviation of DCDC § 20.608.070 from NRS 278.220, the Board essentially argues that the silence of NRS 278.220 gives the Board the authority to require a super-majority vote. On its face, the Board’s argument appears reasonable. However, the Board fails to cite to any authority supporting the proposition that it may choose what portions of NRS Chapter 278 it must follow and what portions it does not have to follow.
 
 [3]
 

 
 *589
 
 After a careful review of NRS Chapter 278 and other relevant statutes, we conclude that NRS Chapter 278 provides a comprehensive statutory framework for the Board to follow as it designs and implements the master plan for Douglas County. Because the legislature omitted any reference to a voting requirement in NRS 278.220, we conclude that this omission reflects the legislature’s intent to require only a simple majority vote by the Board to approve a master plan amendment. If the legislature intended to require a super-majority vote of the Board to amend the master plan, it would have expressed this intent just as it had done in NRS 278.210 by requiring a two-thirds vote of the Planning Commission.
 

 Indeed, the legislature has expressly required a heightened voting standard by the Board in a number of other instances.
 
 See, e.g.,
 
 NRS 377B.100 (two-thirds vote by the Board required to approve tax for infrastructure); NRS 540A.040 (two-thirds vote by the Board required to take action concerning the Board’s administrative matters); NRS 705.020 (two-thirds vote by the Board required to grant use of a street to the railroad). Certainly, the desire of the Board to curtail development and strictly control land use is understandable. However, given the legislature’s decision to not impose a heightened voting standard under NRS 278.220, we conclude that the Board cannot independently impose this requirement.
 

 Accordingly, we conclude that the Board exceeded the legislative authority granted it under NRS Chapter 278 by requiring a super-majority vote by the Board to approve a master plan amendment. Because the legislature specifically excluded any reference to a two-thirds or super-majority voting requirement by the Board, we further conclude that the legislature intended to require only a simple majority vote by the Board to approve a master plan amendment under NRS 278.220. As this court has noted, “it is not the business of this court to fill in alleged legislative omissions based on conjecture as to what the legislature would or should have done.” McKay v. Board of Cty. Comm’r, 103 Nev.
 
 *590
 
 490, 492, 746 P.2d 124, 125 (1987). We therefore hold that DCDC § 20.608.070 is invalid because it goes beyond the legislative intent espoused in NRS 278.220.
 
 [4]
 

 CONCLUSION
 

 Because the Board twice voted in favor of Falcke’s application for a master plan amendment on a three-to-two majority vote, we conclude that the Board approved the master plan amendment under NRS 278.220. By virtue of its vote, we further conclude that the Board has a duty under NRS 34.160 to give effect to its vote and approve Falcke’s master plan amendment. Accordingly, we grant Falcke’s petition. The clerk of this court shall issue a writ of mandamus compelling the Board to approve Falcke’s application for a master plan amendment.
 
 [5]
 

 [1]
 

 Because the Board is comprised of five members, a super-majority consists of a four-to-one vote.
 

 [2]
 

 The Board raises two additional arguments. First, the Board argues that Falcke has failed to exhaust his administrative remedies by not presenting to the Board his argument concerning the validity of DCDC § 20.608.070. The Board relies solely on First American Title Co. v. State of Nevada, 91 Nev. 804, 543 P.2d 1344 (1975), as support for its argument. In
 
 First Am. Title Co.,
 
 this court held that a taxpayer could not maintain a suit where it had failed to challenge the property valuation before the county and state boards of equalization as required under Nevada statute.
 
 See id.
 
 at 805-06, 543 P.2d at 1345. We conclude that
 
 First Am. Title Co.
 
 is inapplicable to this case because no similar Nevada statute requires Falcke to first present his challenge to the Board.
 

 Second, the Board also argues that mandamus does not lie because the Board had no duty to grant the master plan amendment. As discussed herein, we conclude that the Board does have a duty to grant the master plan amendment under NRS 278.220 because it voted twice to approve the amendment on a three-to-two majority vote. Accordingly, we conclude that mandamus is appropriate in this case in order to compel the Board, by virtue of its vote, to grant Falcke’s amendment to the master plan.
 

 [3]
 

 The Board does cite to
 
 Lamb,
 
 90 Nev. at 332-33, 526 P.2d at 82, as support for the proposition that local county or city ordinances are invalidated by statute only if the legislature intended to occupy the field of regulation in the relevant area of legislation. The Board goes on to argue that NRS Chapter
 
 *589
 
 278 has delegated all authority regarding land use and development issues to the Board, including the authority to require a super-majority vote by the Board to approve a master plan amendment. However, we conclude that
 
 Lamb
 
 is inapplicable to this case on this issue because, as discussed above, the legislature clearly did not intend to occupy the field of regulation concerning local land use and development issues. Rather, pursuant to NRS Chapter 278, the legislature sought to provide a clear and unambiguous statutory framework for the Board to follow as it created its own master plan and amendments thereto. Thus, we conclude that NRS Chapter 278 does not grant the Board authority to deviate from the specific language and requirements of NRS 278.220.
 

 [4]
 

 We note that DCDC §§ 20.608.060 and 20.608.070 conflict with NRS 278.220 in another crucial way. The plain language of NRS 278.220 does not require that the Board’s decision comport with the Planning Commission’s decision in approving a master plan amendment.
 
 See
 
 NRS 278.220; 79-14 Op. Att’y Gen. 73 (1979) (concluding that the Board “is not precluded from subsequently acting on a proposed amendment to the Master Plan which initially failed to obtain an affirmative two-thirds majority vote of the [Planning Commission]”). However, DCDC §§ 20.608.060 and 20.608.070 require that both the Board and the Planning Commission agree to the master plan amendment. In light of our conclusion that DCDC § 20.608.070 is invalid because it conflicts with NRS 278.220, we note this additional conflict between DCDC §§ 20.608.060 and 20.608.070 and NRS 278.220 in order to provide guidance to Douglas County on this issue.
 

 [5]
 

 We note that after a careful review of the entire record, it appears that Falcke’s request for a zoning change of the Herbig property is still subject to approval by the Board pursuant to DCDC § 20.610.040.