LAS VEGAS POLICE PROTECTIVE ASSOCIATION METRO, INC., Petitioner, v. THE EIGHTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, in and for THE COUNTY OF CLARK, and THE HONORABLE JESSIE WALSH, District Judge, Respondents, and LAS VEGAS METROPOLITAN POLICE DEPARTMENT CITIZEN REVIEW BOARD, Real Party in Interest.

No. 44677

LAS VEGAS POLICE PROTECTIVE ASSOCIATION METRO, INC., Appellant, v. LAS VEGAS METROPOLITAN POLICE DEPARTMENT CITIZEN REVIEW BOARD, Respondent.

No. 44774

March 16, 2006                          130 P.3d 182

*Wright Judd & Winckler* and *Bruce M. Judd*, Las Vegas, for Petitioner/Appellant.

*John Dean Harper*, Las Vegas; *Kathryn A. Werner*, Las Vegas, for Appellant.

*Andrea Beckman*, Las Vegas, for Real Party in Interest/ Respondent.

*Allen Lichtenstein*, Las Vegas, for Amici Curiae the American Civil Liberties Union of Nevada, the National Association for the

Advancement of Colored People—Las Vegas, Community Peace, the Mexican American Political Association, the former Chairperson of the Committee of the Advisory Committee on Citizen Review Board, and the National Alliance Against Racist and Political Repression.

## OPINION

By the Court, DOUGLAS, J.:

In these consolidated cases, we consider whether the district court properly enforced an advisory review board subpoena that directed a police officer to appear before the board during its review of an investigation regarding a citizen complaint. NRS 289.390(1)(c) authorizes an advisory review board to issue subpoe-

nas only when acting within the scope of its jurisdiction; therefore, any subpoena issued outside of NRS 289.385(1)'s jurisdictional limitation precluding the board from reviewing matters involving allegations of criminal conduct, is invalid and unenforceable.

Here, however, as the district court recognized, the subpoena was issued within the context of the advisory review board's evaluation of a police department's internal investigation concerning departmental policy violations. Thus, because the advisory review board was not reviewing allegations of criminal conduct or otherwise acting outside of its jurisdiction, the district court properly enforced the board's subpoena.

## FACTS AND PROCEDURAL HISTORY

In 1999, Clark County Code Chapter 2.62 and Las Vegas Municipal Code Chapter 2.64 jointly created real party in interest/respondent, the Las Vegas Metropolitan Police Department Citizen Review Board (the citizen review board), pursuant to the advisory review board enabling legislation codified in NRS Chapter 289.[1] Under the codes and NRS Chapter 289, the citizen review board is authorized to advise the Las Vegas Metropolitan Police Department (the police department) on issues concerning the police department's peace officers.[2] When warranted, it may refer citizen complaints against peace officers to the police department and review the police department's internal investigations, as well as make recommendations regarding discipline.[3] Its function "is to act as an advisory body to [the police department], and to inform the public of [the citizen review board's] recommendations to the extent permitted by law."[4]

In 2004, a citizen complaint was filed with the citizen review board, against Officer Steve Leyba and another officer. The citizen review board screening panel reviewed the complaint and referred it to the police department's internal affairs section for investigation. After multiple internal investigations, the screening panel ultimately referred the matter to the citizen review board hearing panel for further inquiry.

The citizen review board hearing panel scheduled a hearing and issued a notice to the two officers. The notice stated that "a complaint alleging . . . false arrest, harassment, abuse of authority and conduct unbecoming, alleged to have occurred December 10 & December 26, 2003," had been filed. The citizen review board then subpoenaed Officer Leyba to appear at the hearing.

---

[1]*See* NRS 289.380; NRS 289.383.

[2]NRS 289.380(1); NRS 289.387(4); Clark County Code § 2.62.010; Las Vegas Municipal Code § 2.64.010.

[3]*See* sources cited *supra* note 2.

[4]Clark County Code § 2.62.010; Las Vegas Municipal Code § 2.64.010.

Officer Leyba, however, despite apparently taking no steps to quash the subpoena, failed to appear before the hearing panel. Consequently, the citizen review board filed an application for a show cause citation and enforcement action in the district court, requesting that the court direct Officer Leyba to show cause why he should not be held in contempt of court for failure to comply with the subpoena.

Thereafter, petitioner/appellant Las Vegas Police Protective Association Metro, Inc. (PPA), filed a motion to intervene in the district court proceeding. At the initial district court hearing, Officer Leyba (a PPA nonmember) stated that he did not object to PPA's intervention, and the district court orally allowed PPA to intervene over the citizen review board's objection. The court also permitted PPA to file an opposition to the citizen review board's application in open court; it then went on to consider the merits of the case.

The citizen review board pointed out that NRS 289.390 authorizes the hearing panel to issue subpoenas within its jurisdiction. Recognizing that NRS 289.385 limits the hearing panel's jurisdiction to noncriminal matters, the citizen review board asserted that "[t]here has been no allegation that a crime has been committed by [Officer Leyba]." Thus, according to the citizen review board, Officer Leyba had refused to comply with a validly issued subpoena. Officer Leyba, along with PPA, disagreed that the citizen review board had authority to subpoena him.

After hearing the parties' arguments, the court noted that it wished to further consider whether the citizen review board had jurisdiction over the matter—thus, whether there existed allegations that Officer Leyba had committed a crime—so that it could determine whether the subpoena was valid. Consequently, the citizen review board submitted, in camera, documents concerning its review of the citizen complaint investigation.[5] At the next hearing, the citizen review board contended that the hearing panel was merely investigating allegations that Officer Leyba had violated

---

[5]The documents reviewed in camera were destroyed by the court. The citizen review board then moved to submit to the district court duplicate copies of the destroyed documents, under seal, in order that they might be included as part of the appellate record. The district court granted the motion, and the sealed documents later were transmitted to this court. PPA asserts that the sealed documents are irrelevant since, as PPA was not given the documents and the district court never provided a detailed inventory of what was examined, there is no proof that the documents are the same as those originally considered by the district court. But as the district court reviewed them and allowed them to be filed under seal, we conclude that they may be considered in our de novo review of whether the citizen review board exceeded its jurisdiction by reviewing and investigating allegations of criminal conduct.

police department policies involving the failure to obtain consent before undertaking a search and seizure. Officer Leyba countered that, if he is found culpable of the asserted acts, the complaint and investigation could nonetheless lead to the filing of criminal charges.

Subsequently, the district court entered an enforcement order, determining that the citizen review board has authority to issue subpoenas to officers who are the subject of an investigation and that the citizen review board has jurisdiction over this matter in particular. Specifically, the court concluded that an officer must testify in citizen review board hearings when asked specific questions, unless the officer invokes his constitutional privilege to remain silent on the grounds that his answer might incriminate him. The court then ordered Officer Leyba "to appear and testify before the hearing panel." The court further indicated that Leyba's second failure to appear would constitute contempt.

PPA then filed a motion for reconsideration of, or to alter or amend, the district court's enforcement order. In its motion, PPA suggested that the court had "misapprehended whether the matter involving Officer Leyba was one in which it was alleged that the crime of false arrest was committed." The district court denied the motion, stating that "upon review of [the investigation] records in camera, the Court saw no allegation that [O]fficer Leyba had been accused of a crime . . . . To the extent the words 'false arrest' and 'harassment' were used in any citizen review board documents, the Court orders them stricken." The court then specified that the matter under review involved whether consent to search had been granted and whether the internal investigations were adequate, noting that the "consent issue raised in the complaint does not involve criminal conduct, unless PPA wants to interpret every improper search and seizure as criminal to its members."

Consequently, PPA filed both the instant petition and a notice of appeal, expressing uncertainty about whether it properly could seek this court's review of the matter through extraordinary writ petition or appeal. In Docket No. 44677, PPA seeks a writ of certiorari or prohibition preventing the citizen review board from subpoenaing Officer Leyba in connection with the citizen review board's evaluation of the citizen complaint investigations. Docket No. 44774 involves PPA's appeal from the district court's order concluding that the citizen review board has jurisdiction over the matter and authority to subpoena Officer Leyba.

This court consolidated the two cases and granted a temporary stay, and the citizen review board responded. The American Civil Liberties Union of Nevada, the National Association for the Advancement of Colored People—Las Vegas, Community Peace, the Mexican American Political Association, the former Chairperson

of the Committee of the Advisory Committee on Citizen Review Board, and the National Alliance Against Racist and Political Repression were permitted to file an amicus curiae brief.

## DISCUSSION

*Substantive appealability*

Preliminarily, PPA explains that it filed both a writ petition and an appeal because it is unclear whether the district court's order enforcing the citizen review board's subpoena is substantively appealable.[6] This court has jurisdiction to consider an appeal only when the appeal is authorized by statute or court rule.[7] Although no statute exists authorizing appeals from orders enforcing advisory review board subpoenas, NRAP 3A(b)(1) permits an aggrieved party to appeal from the final judgment "in an action or proceeding commenced in the court in which the judgment is rendered." A final judgment "is one that disposes of all the issues presented in the case, and leaves nothing for the future consideration of the court, except for post-judgment issues such as attorney's fees and costs."[8]

PPA maintains that the district court's order "stands immediately next to an order of contempt" and is therefore nonappealable under this court's reasoning in *Pengilly v. Rancho Santa Fe Homeowners*.[9] In *Pengilly*, we concluded that a contempt order arising from within an underlying district court action is not appealable but challengeable only through a writ petition.[10] But in this case, the district court's order was not ancillary to any other district court action; rather, the citizen review board applied for relief directly under NRS 289.390(2), which governs enforcement actions.

NRS 289.390(2) does not address contempt but instead merely authorizes an advisory review board hearing panel to petition the district court for an order directing a noncomplying witness to appear or testify, or, in other words, to enforce an advisory review

---

[6]*See* NRS 34.020(2) and 34.330 (providing that writ relief is available only when petitioners have no adequate and speedy legal remedy); *Pan v. Dist. Ct.*, 120 Nev. 222, 224, 88 P.3d 840, 841 (2004) (noting that an appeal is an adequate legal remedy that generally precludes writ relief); *Pengilly v. Rancho Santa Fe Homeowners*, 116 Nev. 646, 647 n.1, 5 P.3d 569, 570 n.1 (2000) (noting "that if appellate jurisdiction were proper, then writ relief would be inappropriate").

[7]*Taylor Constr. Co. v. Hilton Hotels*, 100 Nev. 207, 678 P.2d 1152 (1984).

[8]*Lee v. GNLV Corp.*, 116 Nev. 424, 426, 996 P.2d 416, 417 (2000).

[9]116 Nev. 646, 5 P.3d 569 (2000).

[10]*Id.*

board subpoena. And since advisory review board subpoenas are not court-issued, the court must enter an enforcement order under NRS 289.390(2), and that order must be disobeyed, before any contempt of court proceedings will lie. Thus, although the citizen review board also filed its action under NRS 22.010, which specifically governs contempt, that issue was not properly before the court, and the citizen review board prematurely invoked NRS 22.010's contempt provisions.[11]

In effect, the court's order merely enforced the citizen review board's subpoena under NRS 289.390(2). It did not hold or refuse to hold Officer Leyba in contempt for his failure to appear before the hearing panel.[12] Because the district court's order resolved all of the issues properly before the court, concluding the statutorily authorized NRS 289.390(2) process, the district court's order was the final resolution of the issues presented in a district court proceeding and consequently is appealable by an aggrieved party.[13]

Notably, other jurisdictions have reached the same conclusion under similar finality requirements.[14] For instance, the United

---

[11]*See Lee*, 116 Nev. at 427, 996 P.2d at 417-18 (noting that this court, in determining finality, will look not only at a district court order's label but also at what the order substantively accomplishes).

[12]Since the district court's order did not direct Officer Leyba to show cause why he should not be held in contempt, PPA's comparison of this matter to cases indicating that a writ petition is appropriate to contest an order granting an application to show cause is inapposite.

[13]*Cf. Matter of Water Rights of Humboldt River*, 118 Nev. 901, 906, 59 P.3d 1226, 1229 (2002) (recognizing that this court has appellate jurisdiction over a contempt order entered as a final judgment in a statutory proceeding that authorizes an appeal from the judgment).

[14]*See, e.g., Transcall America, Inc. v. Butterworth*, 604 So. 2d 1253, 1254 (Fla. Dist. Ct. App. 1992) (holding that "where the order of the trial court [granting a motion to compel] results from a separate and distinct judicial proceeding on the motion to compel, the order meets the well-established test for finality and should be appealable"); *Department of Reg. and Educ. v. Schmidt*, 554 N.E.2d 390, 392 (Ill. App. Ct. 1990) (noting that an order to comply with an administrative subpoena, arising in an action to enforce that subpoena, was an appealable judgment even without a contempt finding because it finally determined the rights of the parties); *Com'r of Health Services v. Kadish*, 554 A.2d 1097, 1098 n.1 (Conn. App. Ct. 1989) (noting that, unlike civil action discovery orders, when the only proceeding before the court involves the propriety of an investigative subpoena, "[t]hat proceeding will not result in a later judgment from which the defendant can then appeal"); *see also Southern Ore. Broadcasting v. Dept. of Rev.*, 597 P.2d 795, 797-98 (Or. 1979) (accepting the conclusion, even while expressing some doubts, that an order to produce, which arose out of proceedings instituted to enforce a departmental subpoena, was final and appealable as from a "special statutory proceeding").

States Supreme Court has distinguished orders upholding administrative subpoenas from nonappealable discovery enforcement orders arising from grand jury and other judicial proceedings because, once the former order is issued, "there remains nothing for [the court] to do."[15] Similarly, the California Court of Appeal has held that "the better view is that 'orders requiring compliance with the subpoenas are appealable as final judgments in special proceedings,'" rather than reviewable only by extraordinary writ.[16] Likewise, we conclude that the proper method for a party to challenge a district court order enforcing or refusing to enforce an administrative subpoena, when the order resolves all issues in the proceeding, is by way of appeal.

### Appellate standing

PPA was allowed to intervene in the district court proceedings over the citizen review board's objection and consequently is a party.[17] Generally, an "intervenor is afforded all the rights of a party to the action," including a right to appeal independent from that of the original parties.[18]

Under NRAP 3A(a), however, only "aggrieved parties" may appeal.[19] "A party is 'aggrieved' within the meaning of NRAP 3A(a) 'when either a personal right or right of property is ad-

---

[15]*Cobbledick v. United States*, 309 U.S. 323, 330 (1940) ("The doctrine of finality is a phase of the distribution of authority within the judicial hierarchy. But a proceeding like that under § 12 of the Interstate Commerce Act [authorizing the instigation of district court proceedings to compel testimony from an uncooperative witness] may be deemed self-contained, so far as the judiciary is concerned . . . ."), *and Ellis v. Int. Com. Comm.*, 237 U.S. 434, 442 (1915) (concluding that an order directing appellant to answer the Interstate Commerce Commission's questions and produce documents "is the end of a proceeding begun against the witness," and therefore, "[t]here is no doubt that this appeal lies"), *quoted in Kemp v. Gay*, 947 F.2d 1493, 1496-97 (D.C. Cir. 1991) (noting that the *Cobbledick* Court's "reasoning supports immediate review of orders enforcing subpoenas issued by other agencies as well and such has been the rule").

[16]*Millan v. Restaurant Enterprises Group*, 18 Cal. Rptr. 2d 198, 203 (Ct. App. 1993) (quoting *Wood v. Superior Court (Bd. of Medical Qual.)*, 212 Cal. Rptr. 811, 814 (Ct. App. 1985)).

[17]*See Valley Bank of Nevada v. Ginsburg*, 110 Nev. 440, 447, 874 P.2d 729, 734 (1994). The citizen review board has not since challenged PPA's intervention.

[18]*Appeal of Municipality of Penn Hills*, 546 A.2d 50, 52 (Pa. 1988).

[19]*Valley Bank*, 110 Nev. at 446, 874 P.2d at 734; *Kenney v. Hickey*, 60 Nev. 187, 105 P.2d 192 (1940).

versely and substantially affected' by a district court's ruling."[20] As we recognized in the 1913 case of *Esmeralda County v. Wildes*, a substantial grievance also includes "[t]he imposition of some injustice, or illegal obligation or burden, by a court, upon a party, or the denial to him of some equitable or legal right."[21]

According to the citizen review board, the primary rights "adversely and substantially" affected by the district court's order are those of Officer Leyba, and not PPA, because Officer Leyba was the only officer before the court, and the court ordered him, but no one else, to "appear and testify before the hearing panel."[22] And, the citizen review board points out, it is Officer Leyba, not PPA, who faces sanctions for failure to comply with the order. Thus, the citizen review board asserts, PPA has no standing to appeal the district court's order.

Nonetheless, the district court's conclusion that the citizen review board is authorized to subpoena officers could be directly applied to PPA members based on PPA's participation in the litigation, even though no members were directly involved in the district court proceedings. And the citizen review board admits that the district court proceedings and order, in light of PPA's intervention, "were expanded to include all police officers."[23] Accordingly, PPA is aggrieved because the district court's order affects its ability and legal right to defend PPA members against citizen review board subpoenas.[24]

---

[20]*Valley Bank*, 110 Nev. at 446, 874 P.2d at 734 (quoting *Estate of Hughes v. First Nat'l Bank*, 96 Nev. 178, 180, 605 P.2d 1149, 1150 (1980)).

[21]36 Nev. 526, 535, 137 P. 400, 402 (1913).

[22]*Cf. In re Grand Jury Matter*, 770 F.2d 36, 38 (3d Cir. 1985) (recognizing that, under federal law in a grand jury proceeding, "an individual or entity claiming a property right or privilege in . . . subpoenaed documents has standing to contest the denial of a motion to quash the subpoena," even when the subpoena is not directed at that individual or entity).

[23]We note that, as a result of PPA's intervention, the citizen review board has apparently applied this court's temporary stay to all proceedings involving subject police officers.

[24]*See Leonard v. Belanger et. al.*, 67 Nev. 577, 594, 222 P.2d 193, 201 (1950) (indicating that a party might have appellate standing when "the circumstances justify the application of the doctrine of estoppel"). For example, the doctrine of issue preclusion might preclude PPA members from again raising this issue through PPA in other cases. *See Executive Mgmt. v. Ticor Title Ins. Co.*, 114 Nev. 823, 835-36, 963 P.2d 465, 473 (1998) (listing the three elements of issue preclusion: (1) the current action must include an issue identical to that decided in a prior action, (2) the prior ruling must have been on the merits and have become final, and (3) the party against whom the judgment is asserted must have been a party or in privity with a party to the prior litigation).

*Original writ petition*

A writ of certiorari is appropriate to remedy jurisdictional excesses committed by an inferior tribunal, board, or officer, exercising judicial functions.[25] Similarly, writs of prohibition are available to arrest the proceedings of any tribunal or board when such proceedings are without or in excess of the tribunal's or board's jurisdiction.[26] Extraordinary writs, however, are available only when the petitioner has no plain, speedy, and adequate remedy in the ordinary course of law.[27] Because, as this court has repeatedly noted, an appeal is an adequate legal remedy, we conclude that extraordinary writ relief is precluded by the availability of an appeal in this instance.[28]

*The citizen review board subpoena's validity and enforceability*

Only subpoenas that have been issued by an entity "properly endowed with the authority to issue the subpoenas" are enforceable in court.[29] NRS 289.390(1)(c) authorizes an advisory review board panel to, "[w]ithin the scope of its jurisdiction, issue subpoenas to compel the attendance of witnesses to testify before the panel." As no concerns regarding the validity of NRS 289.390 have been raised on appeal, the question before this court is whether, as the district court so determined, the citizen review board's subpoena was properly issued under subsection (1)(c) of that statute.

PPA argues that the citizen review board had no authority to subpoena Officer Leyba because it lacks jurisdiction over the investigations of the citizen complaint under NRS 289.385, which prohibits an advisory review board from assuming jurisdiction over any matters involving allegations of criminal conduct. The citizen review board, in turn, points out that no formal criminal investigation has been instituted and no criminal charges have been filed, and that the police department, in its investigations of the citizen complaint, never indicated that any criminal conduct was implicated.

---

[25]*Dayside Inc. v. Dist. Ct.*, 119 Nev. 404, 406-07, 75 P.3d 384, 386 (2003); NRS 34.020(2).

[26]*State of Nevada v. Dist. Ct. (Anzalone)*, 118 Nev. 140, 146-47, 42 P.3d 233, 237 (2002); NRS 34.320.

[27]NRS 34.020(2); NRS 34.330.

[28]*Pan*, 120 Nev. at 224, 88 P.3d at 841; *Dayside Inc.*, 119 Nev. at 407, 75 P.3d at 386; *Pengilly*, 116 Nev. at 647 n.1, 5 P.3d at 570 n.1; *Karow v. Mitchell*, 110 Nev. 958, 962, 878 P.2d 978, 981 (1994).

[29]*Andrews v. Nev. St. Bd. Cosmetology*, 86 Nev. 207, 208, 467 P.2d 96, 97 (1970).

This court reviews matters of statutory interpretation de novo, construing a statute so as to give effect to the Legislature's intent in enacting it.[30] When the statute is clearly worded, we generally may not go beyond the statute's language to determine the Legislature's intent.[31] The language of a statute should thus be given its plain meaning, unless doing so "violates the spirit of the act"[32] or produces " 'absurd or unreasonable results.' "[33] When the statute is subject to more than one reasonable interpretation, however, it is ambiguous, and factors peripheral to the statute's language properly may be considered to determine the Legislature's intent.[34]

NRS 289.385(1) provides that an advisory review board "[d]oes not have jurisdiction over any matter in which it is alleged that a crime has been committed." Both parties acknowledge that the citizen complaint does not include the terms "crime" or "criminal," the police department did not label its investigations a criminal matter, and no criminal charges were filed or pending. PPA nevertheless asserts that a complaint involving false arrest and intentional wrongdoing must include facts that constitute, or could fall within the legal elements of, certain crimes. Accordingly, PPA insists, such complaints "allege" that a crime was committed and the citizen review board's involvement with them necessarily runs afoul of NRS 289.385(1)'s jurisdictional limitation. We disagree.

As PPA notes, "allege" generally means "to assert without proof."[35] But *Black's Law Dictionary* defines "allege" as follows: "[t]o state, recite, claim, assert, or charge; to make an allegation."[36] "Allegation" is defined as the "assertion, claim, declaration, or statement of a party to an action, made in a pleading, setting out what he expects to prove."[37] The dictionaries' definitions are not entirely consistent, the former two descriptions being much

---

[30]*Hays Home Delivery, Inc. v. EICON*, 117 Nev. 678, 682, 31 P.3d 367, 369 (2001); *County of Clark v. Upchurch*, 114 Nev. 749, 753, 961 P.2d 754, 757 (1998).

[31]*McKay v. Bd. of Supervisors*, 102 Nev. 644, 648, 730 P.2d 438, 441 (1986).

[32]*Id.*

[33]*Harris Assocs. v. Clark County Sch. Dist.*, 119 Nev. 638, 642, 81 P.3d 532, 534 (2003) (quoting *Glover v. Concerned Citizens for Fuji Park*, 118 Nev. 488, 492, 50 P.3d 546, 548 (2002), *overruled in part on other grounds by Garvin v. Dist. Ct.*, 118 Nev. 749, 59 P.3d 1180 (2002)).

[34]*McKay*, 102 Nev. at 649, 730 P.2d at 442.

[35]*Merriam Webster's Collegiate Dictionary* 30 (10th ed. 1994).

[36]*Black's Law Dictionary* 74 (6th ed. 1990).

[37]*Id.*

broader than the latter. Moreover, none of these definitions clarifies whether an ''allegation'' exists when facts that comprise elements of a crime are asserted, or whether more formal language or action regarding the alleged crime is required.

A ''crime'' is generally considered to involve the commission of any conduct or omission forbidden and punishable by public law.[38] Thus, NRS 289.385(1)'s prohibition could reasonably be read to exclude any matter in which it is asserted, without proof (or intent to prove), that legally prohibited conduct was committed, *i.e.*, advisory review boards have no jurisdiction over any matter in which facts that could constitute a crime are asserted without proof. The provision, however, is susceptible to more than one reasonable interpretation; it could likewise prohibit advisory review boards from entertaining matters in which it is stated, claimed or anticipated that a legally punishable crime will be proven.[39]

A review of NRS 289.385's legislative history suggests that, while many interested persons wished to include criminal matters in the scope of advisory review boards' operations, the Legislature did not desire advisory review boards to assume jurisdiction over criminal matters.[40] Instead, the legislative history intimates that advisory review boards were designed to address only policy violations, even if those violations occurred within the context of a criminal act.[41] Thus, supporting the second, less broad interpretation, the legislative history indicates that the provision was intentionally designed to include a jurisdictional limitation preventing an advisory review board from becoming entangled with an investigation or proceeding that might lead to criminal charges or the verification of a crime.

Further, policy reasons support this interpretation. Ultimately, counties and municipalities were permitted to create advisory review boards in an effort to encourage positive relations and com-

---

[38]*See* NRS 217.035(1) (defining ''crime,'' in the context of statutes providing aid to certain victims of crime, as an ''act or omission . . . forbidden by law and punishable upon conviction''); *Merriam Webster's Collegiate Dictionary* 274 (10th ed. 1994) (defining ''crime'' as, among other things, ''an act or the commission of an act that is forbidden or the omission of a duty that is commanded by a public law and that makes the offender liable to punishment by that law'').

[39]*See Beazer Homes Nevada, Inc. v. Dist. Ct.*, 120 Nev. 575, 585, 97 P.3d 1132, 1138-39 (2004) (concluding that a statute is ambiguous when it includes a term having a particular meaning in the legal arena).

[40]*See* Hearing on A.B. 112 and S.B. 39 Before the Assembly Government Affairs Comm., 69th Leg. (Nev., May 13, 1997); Hearing on S.B. 39 Before the Assembly Government Affairs Comm., 69th Leg. (Nev., June 30, 1997).

[41]*Id.*

munications between communities and law enforcement agencies by enabling community members to work with police departments in resolving citizen-related issues concerning peace officers.[42] If NRS 289.385(1) is interpreted to prohibit advisory review boards from considering departmental policy violations in the context of a complaint merely asserting facts that could possibly, if found true, constitute a crime, the legislation's spirit and purpose would be violated. Such a result would be untenable under ordinary rules of statutory construction.[43]

Therefore, the question of jurisdiction ultimately focuses on the nature of the investigation, and not on whether specific elements of a crime have been alleged within the context of a citizen complaint: the citizen review board may not (1) refer a citizen complaint to the police department for a criminal investigation or to pursue criminal charges, or (2) review a police department's internal investigations for concerns regarding violations of criminal statutes. In this respect, we see no conflict with the Clark County and Las Vegas Municipal Codes' jurisdictional limitations; the codes do not purport to expand the citizen review board's jurisdictional limitation.[44]

Here, the citizen complaint ostensibly asserts that the citizen was wrongfully arrested and harassed by the officers in retaliation for filing a prior citizen complaint. It also alleges that the citizen was physically threatened and that the citizen's apartment was entered and searched without valid permission and reasons. Despite the "false arrest" and "harassment" terms used in its early letters, however, there is no indication in the record that the citizen review

---

[42]See NRS 289.380(1); Hearing on S.B. 39 and A.B. 112 Before the Assembly Government Affairs Comm. and the Senate Government Affairs Comm., 69th Leg., at Ex. C (Nev., February 14, 1997) (Senator Joseph M. Neal, Jr.'s prepared remarks).

[43]See Alper v. State ex rel. Dep't Hwys., 96 Nev. 925, 621 P.2d 492 (1980) (recognizing that statutes should be construed, so far as practicable, to effectuate explicitly expressed legislative intent and purposes).

[44]Clark County Code § 2.62.060(b)(2) (providing that the citizen review board does not have jurisdiction over a complaint involving the "[c]onduct of an officer which is the subject of an ongoing criminal investigation or prosecution"); Las Vegas Municipal Code § 2.64.060(B)(2) (same); see Falcke v. Douglas County, 116 Nev. 583, 588, 3 P.3d 661, 664 (2000) (recognizing that "[b]ecause counties obtain their authority from the [L]egislature, county ordinances are subordinate to statutes if the two conflict"); Boulware v. State, Dep't Human Resources, 103 Nev. 218, 219, 737 P.2d 502, 502 (1987) (noting that an entity "may not act outside the meaning and intent of [its] enabling statute"); McCollum v. Director of Revenue, 906 S.W.2d 368, 369 (Mo. 1995) (recognizing that, in the absence of express inconsistency or irreconcilable conflict, an ordinance will be construed so as to maintain its validity even if it does not follow the exact language of its enabling statute).

board referred the matter for criminal investigation, or that the police department investigated the officers' conduct solely with regard to possible criminal violations. Moreover, the citizen review board sufficiently demonstrated to the district court that it was merely reviewing the police department's internal investigations and its determination with respect to the citizen complaint that Officer Leyba had not violated internal police department policies, not any allegations of criminal conduct. Accordingly, the district court appropriately ordered the crime-related terms ''false arrest'' and ''harassment'' stricken from the citizen review board's documents. And consequently, the citizen review board matter involves no allegations that a crime has been committed. Because the citizen review board has jurisdiction over citizen matters involving allegations of improper, but noncriminal, conduct, the citizen review board was within its jurisdiction to consider the matter, and its subpoena directing Officer Leyba to appear before the hearing panel is valid under NRS 289.390(1). Therefore, the district court properly enforced the subpoena.

## *CONCLUSION*

Because we conclude that we have jurisdiction over the appeal in Docket No. 44774, we necessarily deny the writ petition in Docket No. 44677. Under NRS 289.390(1)(c), an advisory review board must have jurisdiction over a citizen complaint in order to issue subpoenas to compel the appearance of a witness at a hearing regarding that complaint. While NRS 289.385(1) prohibits an advisory review board from assuming jurisdiction over any matter involving allegations of criminal conduct, the citizen review board here was reviewing the police department's investigations of possible departmental policy violations—noncriminal conduct—alleged in the citizen complaint. Therefore, the district court properly upheld the citizen review board's subpoena, and we affirm the district court's order.[45]

BECKER and PARRAGUIRRE, JJ., concur.

ROSE, C. J., concurring and dissenting:

I dissent because I do not agree that PPA's rights have been '' 'adversely and substantially affected' '' sufficient to render it an aggrieved party for purposes of appeal.[1] The plurality opinion concludes that PPA is an aggrieved party because the district

---

[45]In light of this opinion, we vacate the temporary stay entered in this matter on February 15, 2005; PPA's motion for an emergency stay is denied as moot.

[1]*Valley Bank of Nevada v. Ginsburg*, 110 Nev. 440, 446, 874 P.2d 729, 734 (1994) (quoting *Estate of Hughes v. First Nat'l Bank*, 96 Nev. 178, 180, 605 P.2d 1149, 1150 (1980)); NRAP 3A(a).

court's order "affects its ability to defend PPA members against citizen review board subpoenas." However, the issue before us is fact determinative—whether the *specific* complaint involved alleges that a crime was committed. As a result, the district court appears to have limited its consideration of the allegations to those made against Officer Leyba. PPA only suffers or benefits from a general rule or interpretation of NRS 289.385 that applies to all complaints. Such was not the district court's formulation, and I conclude that PPA is not an aggrieved party properly before this court.

I do agree with the plurality opinion's interpretation that the citizen review board has jurisdiction in this matter, but I have difficulty determining what standard the plurality opinion is using to define the limits placed on the citizen review board. Does it limit the citizen review board's inquiry into anything that could be considered "criminal conduct," or should the limitation be determined by the "nature of the investigation," or both? In any event, I believe the limitation should only begin when a formal criminal charge has been made.

NRS 289.380 enables the governing body of a city or county to create a citizen review board to advise on issues concerning police officers within the city or county.[2] Presumably, this broad grant of authority is coupled with the ability to carry out the mission assigned. However, this authority to act is limited by NRS 289.385(1), which states that the citizen review board does not have jurisdiction over any matter "in which it is alleged that a crime has been committed." As stated in the plurality opinion, "allegation" is defined in *Black's Law Dictionary* as the "assertion, claim, declaration, or statement of a party to an action, made in a pleading."[3] The definition of an allegation is a statement made in a formal document such as a pleading or charging criminal document. Therefore, it necessarily follows that NRS 289.385(1)'s prohibition extends only to matters where a crime has been formally charged. Statutory language that is clear and unambiguous should be enforced unless it leads to an absurd or truly unreasonable result.[4] Since there is no ambiguity in the statute and "alleged" has a specific definition, I would limit the jurisdiction of the citizen review board in matters where a crime has been specifically charged in a pleading or in a charging criminal document.

But even if we conclude that the language limiting jurisdiction is ambiguous or in conflict with the broad grant of power given by

---

[2]*See also* NRS 289.383 (enabling the metropolitan police committee on fiscal affairs to request that the political subdivisions create a review board to advise the department on issues concerning its police employees).

[3]*Black's Law Dictionary* 74 (6th ed. 1990).

[4]*See Lowe Enterprises v. Dist. Ct.*, 118 Nev. 92, 102, 40 P.3d 405, 411-12 (2002).

the preceding statute that created the citizen review board, statutory construction principles dictate that we interpret NRS 289.385(1)'s "alleged crime" language to require a specific formal written criminal charge as opposed to general statements that can be interpreted to be accusing someone of a crime. Effort should be made to see that all parts of an ambiguous statute are given meaning and that all sections are read in harmony and given effect if possible.[5] This can easily be accomplished by interpreting the jurisdictional limitation to mean crimes alleged in a formal court document or pleading. This would harmonize the statute giving the citizen review board a broad grant of authority with the statute limiting that authority, thus reaching a reasonable result.

And in interpreting statutes that are ambiguous or in conflict, the guiding principle should be the intent of the Legislature.[6] The legislative history of the statutes at issue in this case supports that the provision narrowly limits the citizen review board's jurisdiction.

During the legislative hearings, Senator Neal, a drafter of this legislation, described the purpose of this legislation, stating that it "was drafted as a result of a shooting by a police officer in which an individual was killed. The measure was . . . an attempt to create a police review board to investigate the actions of police officers."[7] Further, the citizen review board was necessary because "of many incidents of police misconduct that had happened in the past which led to beatings and killings."[8] These incidents resulted in a "rift" between the police department and the public; thus it was necessary for the Legislature to act "to help the citizens control the police to the extent that the citizen would be able to review police misconduct."[9] Senator Neal also described the history of citizen review boards, noting that many review boards had developed since the Rodney King situation.[10]

In briefly discussing limits on the citizen review board's jurisdiction, Stan Olsen, a lieutenant with the Las Vegas Metropolitan Police Department, stated that the citizen review board "should not have any jurisdiction over criminal matters, but if in the process of the criminal act, policy violations occurred, it could and would have jurisdiction over the policy violations."[11] There was also tes-

---

[5]*Metz v. Metz*, 120 Nev. 786, 792, 101 P.3d 779, 783 (2004); *Langon v. Washoe County*, 116 Nev. 115, 118, 993 P.2d 718, 720 (2000).

[6]*State, Dep't Human Res. v. Estate of Ullmer*, 120 Nev. 108, 114, 87 P.3d 1045, 1049 (2004).

[7]Hearing on S.B. 39 Before the Senate Government Affairs Comm., 69th Leg., at 9 (Nev., March 12, 1997).

[8]Hearing on S.B. 39 and A.B. 112 Before the Assembly Government Affairs Comm., 69th Leg., at 12 (Nev., May 13, 1997).

[9]*Id.*

[10]*Id.* at 13.

[11]*Id.* at 20.

timony regarding the existing limits on the Reno Police Review
Board. With the Reno Police Review Board, a citizen complaint
"could not be taken if criminal charges were *pending* which in-
volved the officer and the complainant . . . [because] the out-
come of criminal charges in court needed to be heard."[12] Las
Vegas Metropolitan Police Department Sheriff Keller described
the existing process for review of LVMPD misconduct and stated,
"if the allegations [in a citizen complaint] are determined to be
criminal the administrative investigation is parallel with a criminal
investigation; and . . . when criminal actions are discovered, ap-
propriate charges are filed with the district attorney's office."[13]

Those testifying before the Legislature stated that the citizen re-
view board would be able to review police misconduct even if the
conduct may constitute a crime as long as no criminal charges were
pending. It was further recognized that dual inquiries by the police
and the citizen review board were possible until formal charges
were filed. Therefore, the citizen review board was not precluded
from reviewing conduct that might constitute a crime, at least not
until formal charges were filed.

The plurality opinion would apparently permit the citizen review
board to investigate matters concerning civilian but not criminal
conduct. When investigating matters involving the police and their
interaction with citizens, this interpretation of NRS 289.385(1)
will, in all probability, prove to be too restrictive. A police depart-
ment need only declare a matter "under investigation" and the cit-
izen review board's authority to investigate would evaporate. Re-
quiring that a formal criminal charge or allegation be asserted
before the citizen review board is prohibited from inquiring into a
matter will give the citizen review board greater authority to act,
as I believe the Legislature intended, and also provide a bright line
test to determine if the citizen review board has authority to
investigate.

The purpose of the citizen review board is to provide citizens
with an impartial board to remedy citizens' current "mistrust,
lack of confidence, and ill feelings" toward their police depart-
ment.[14] The Legislature intended to establish a citizen review board
that could meaningfully investigate issues and conduct concerning
police officers. Stripping the citizen review board of jurisdiction
whenever an inquiry is made into conduct that might involve some
criminal activity would seriously limit the very purposes for which
the citizen review board was created. It is very doubtful that such
was the Legislature's intent, to grant broad authority to the citizen

---

[12]*Id.* at 11 (emphasis added).

[13]Hearing on S.B. 39 and A.B. 112 Before the Assembly Government
Affairs Comm. and the Senate Government Affairs Comm., 69th Leg., at 17
(Nev., February 14, 1997).

[14]*Id.* at 7.

review board on the one hand and then completely hobble that authority on the other.

MAUPIN, J., concurring and dissenting:

I agree with Chief Justice Rose that the PPA is not an aggrieved party with standing to argue the propriety of the citizen review board's subpoena of Officer Leyba. I also agree with the Chief Justice regarding the scope of NRS 289.385(1).

I write separately to address the construction of NRS 289.385(1) urged by Justices Gibbons and Hardesty. In short, I cannot believe that the Legislature, in enacting a very important piece of legislation designed to foster and solidify positive relations between police authorities and the communities they serve, intended to create citizen review boards on one hand and emasculate the concept in virtually the same breath. In my view, our colleagues' interpretation of this measure does just that, leaving these boards to review instances of bad etiquette involving members of law enforcement. To me, this interpretation would lead to an absurd result.

GIBBONS, J., with whom HARDESTY, J., agrees, concurring in part and dissenting in part:

I concur with the majority that the Las Vegas Police Protective Association Metro, Inc. (PPA) has appellate standing as an aggrieved party. I further agree with the majority that PPA has an adequate legal remedy through an appeal. I dissent regarding the validity and enforceability of the advisory review board's subpoena.

NRS 289.385(1)'s language is clear and unambiguous: an advisory review board "does not have jurisdiction over any matter in which it is alleged that a crime has been committed." The question of jurisdiction focuses on the specific allegations in the complaint and not on whether the word "crime" is used or a criminal investigation or prosecution has been instigated.

The Las Vegas Metropolitan Police Department Citizen Review Board (the citizen review board) contends that upholding such a far-reaching limitation would violate the "spirit" of the legislation that authorized the creation of advisory review boards.[1] As reflected in the Clark County and Las Vegas Municipal Codes, the purpose behind the advisory review board legislation is to "provide a balance in society in general."[2] The parties acknowledge that during the legislative hearings, there were many statements made

---

[1] The function of the judiciary is to interpret the law. When the Legislature has considered a matter and enacted a statute with plain language that does not clearly contradict any stated purpose, we need look no further into the "spirit" of the legislation.

[2] Hearing on S.B. 39 and A.B. 112 Before the Assembly Government Affairs Comm. and the Senate Government Affairs Comm., 69th Leg. (Nev., Febru-

by some of the legislation's advocates regarding their concerns with police departments' treatment of citizens' claims that they had been subjected to police officers' criminal acts without being able to obtain any redress.[3]

As noted in the legislative committee minutes, numerous cities in other states have created advisory boards.[4] The Legislature had available for review many of these laws. The jurisdictional limitations vary widely,[5] from Baltimore, Maryland's law limiting review "only to complaints against police personnel with respect to discourtesy and use of excessive force as defined by Police Department rules and regulations," to Rochester, New York's law authorizing a board to review completed investigations of police officers' actions that "would, if proven, constitute a crime or constitute unnecessary force," and San Diego County, California's law providing that the board has "authority to [act on] citizen complaints filed against peace officers . . . which allege . . . criminal conduct."[6] Despite the testimony before it, the Legislature unambiguously chose to inscribe NRS 289.385(1) with language that stands in glaring contrast to those states' laws that expressly authorize boards to review allegations of criminal conduct: Nevada advisory review boards "[do] *not have* jurisdiction over any matter in which it is alleged that a crime has been committed." (Emphasis added.) While Justice Maupin may be dismayed by this decision, the judiciary cannot alter the selection of alternative approaches made by our Legislature. The choice made by the Legislature is not absurd; it just results in an overly restrictive jurisdiction for a review board.

Although the Legislature had available various less restrictive models and could have included language that would have permitted the citizen review board to examine matters involving potential crimes, it instead engrafted plain language prohibiting the board from assuming jurisdiction over any complaint that merely "alleges" criminal conduct. Thus, we cannot conclude that the Legislature intended to accomplish anything other than what it

---

ary 14, 1997), at Ex. C (Senator Joseph M. Neal, Jr.'s prepared remarks); *see also* Clark County Code § 2.62.010; Las Vegas Municipal Code § 2.64.010.

[3]*See* Hearing on S.B. 39 and A.B. 112 Before the Assembly Government Affairs Comm. and the Senate Government Affairs Comm., 69th Leg. (Nev., February 14, 1997).

[4]*Id.*

[5]*Id.* at Ex. J (Samuel Walker, *Citizen Review Resource Manual* (1995)).

[6]*Id.* at Ex. J (Samuel Walker, *Citizen Review Resource Manual*, at Doc. 2 (Baltimore City Local Laws § 16-43(a) (1975)), Doc. 22 (Rochester Police Department General Order 320 § II(A) (1993)), and Doc. 25 (San Diego County Citizens Law Enforcement Review Board Proposed Rules and Regulations § 4.1(g) (adopted 1992 and 1994))).

achieved by prescribing the plain language limitation. Therefore, we may look no further.

The advisory review board enabling legislation aims to serve an important public function in promoting law enforcement accountability and relations between law enforcement and Nevada communities. However, I cannot ignore the plain, unambiguous language that the Legislature chose to write into NRS 289.385(1)'s jurisdictional limitation, restricting the citizen review board from reviewing any complaint "in which it is alleged that a crime has been committed."

The citizen review board points to the Clark County and Las Vegas Municipal Codes' jurisdictional limitations in support of its position. To the extent that the codes purport to expand the citizen review board's jurisdictional limitation,[7] I note that county and municipal codes cannot extend authority beyond that provided in the enabling statute.[8]

The complaint's factual allegations appear to fit the elements of criminal conduct.[9] For instance, the citizen complaint effectively alleges that the officers committed oppression under the color of law, as set forth in NRS 197.200; false imprisonment under NRS 200.460; and the willful disregard of a person's safety in performing an act or neglecting a duty, as delineated in NRS 202.595. The citizen complaint thereby contains allegations excluding the matter from the citizen review board's jurisdiction. Because the citizen complaint contains allegations of criminal conduct, the citizen review board was without jurisdiction to consider the matter under NRS 289.385(1). The subpoena directing Officer Steve Leyba to appear before the hearing panel is invalid under NRS 289.390(1). The district court improperly enforced it.

---

[7]Clark County Code § 2.62.060(b)(2) (providing that the citizen review board does not have jurisdiction over a complaint involving the "[c]onduct of an officer which is the subject of an ongoing criminal investigation or prosecution"); Las Vegas Municipal Code § 2.64.060(B)(2) (same).

[8]*See Falcke v. Douglas County*, 116 Nev. 583, 588, 3 P.3d 661, 664 (2000) (recognizing that "[b]ecause counties obtain their authority from the [L]egislature, county ordinances are subordinate to statutes if the two conflict"); *Boulware v. State, Dep't Human Resources*, 103 Nev. 218, 219, 737 P.2d 502, 502 (1987) (noting that an entity "may not act outside the meaning and intent of [its] enabling statute").

[9]The district court's order filed February 15, 2005, indicates that the court conducted an in camera review of the entire internal affairs investigation report and the court did not believe there are allegations of criminal conduct against Officer Leyba. However, this report is not part of the record for us to review.