535 P.2d 38

**Peter SANFILIPPO and Mary Sanfilippo, husband and wife, Appellants,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a corporation, Appellee.**

**No. 1 CA–CIV 2420.**

Court of Appeals of Arizona,
Division 1,
Department A.

May 13, 1975.

Rehearing Denied June 13, 1975.

Review Denied July 14, 1975.

Langerman, Begam, Lewis, Leonard & Marks by Frank Lewis, Phoenix, for appellants.

Scoville, Hofmann & Salcito, P. C. by Leroy W. Hofmann, Phoenix, for appellee.

## OPINION

DONOFRIO, Judge.

This is an appeal from an order in the trial court which reduced the amount of a jury verdict rendered in favor of the appellants. The trial judge found as a matter of law that charges for certain physical therapy treatments rendered to the two appellants by unlicensed assistants of a naturopathic doctor, Victor J. Haag, were not reasonable medical expenses as required by the insurance policy issued to appellants by the appellee insurance company. The trial judge found that these charges were not recoverable as medical expenses under the insurance policy and not enforceable against the insurance company

**12**

due to the fact that the therapy treatments were "contrary to the Arizona law regarding the practice of medicine."

The underlying issue in the case is whether, as a matter of law, the administration of physical therapy treatments in a naturopathic office by unlicensed assistants under the supervision of the naturopath is contrary to the public policy and laws of Arizona relating to the practice of medicine, naturopathy, and physical therapy. If we determine that it is, then the charges for those treatments would not be enforceable against the appellee insurance company under the policy issued to the Sanfilippos. As a general rule, if our Arizona statutes prohibit this type of activity by unlicensed personnel, then a contract founded on a violation of our statutes (which statutes impose a penalty for violation) is void and unenforceable. 61 Am. Jur.2d 378, Physicians and Surgeons § 232.

The facts necessary for a determination of the issue are as follows. The Sanfilippos were involved in an automobile accident on May 22, 1969, each receiving injuries for which they sought treatment at the Ilstrup Accident and Industrial Injury Clinic. It is not disputed that the Sanfilippos had a valid contract of insurance with State Farm at that time by which State Farm agreed to pay all reasonable medical expenses incurred for services furnished in the event the Sanfilippos should sustain injuries in an automobile accident. Both Mr. and Mrs. Sanfilippo were treated for neck and back injuries of the whiplash variety by Dr. Victor J. Haag of the Ilstrup Clinic. Dr. Haag was a licensed naturopath and chiropractor. He personally administered a certain number of manipulative therapy treatments and ultra-sonic sonation treatments to both appellants over a period of months after the accident. The Sanfilippos also received a certain number of microthermy, hot fomentation, and intermittent motorized traction treatments, as well as ultra-sonic sonation treatments at the Ilstrup Clinic by unlicensed assistants to Dr. Haag, but under his supervision.

The insurance company paid all the charges for these treatments except $763.-00, which was the subject of this suit in the trial court. At a trial by a jury, a verdict for the full $763.00 was rendered in favor of the Sanfilippos. The insurance company moved to strike those portions of the $763.00 which represented charges for treatments rendered by the unlicensed assistants to Dr. Haag. The trial judge agreed, and reduced the verdict by $667.00 which he found represented charges for treatments rendered by the unlicensed assistants which were not "reasonable medical expenses" as a matter of law because they were charges for physical therapy treatments performed in contravention of the Arizona laws regarding the practice of medicine. There was a dispute as to whether Dr. Haag personally supervised these assistants, or whether some of the other chiropractors in the Ilstrup Clinic also supervised them. As a factor in our decision, we do not deem that issue significant. We will assume that the jury verdict found as a matter of fact that Dr. Haag as a naturopath did all the supervision of these unlicensed assistants in the performance of the physical therapy treatments rendered to the Sanfilippos.

For the following reasons we affirm the judgment of the trial court and find that State Farm was not under an obligation to pay for those treatments rendered by the unlicensed assistants to Dr. Haag, performed under his supervision.

■ At the outset, we must agree with the appellants that Chapter 13 of Title 32, A.R.S. is not applicable to the practice of naturopathy or physical therapy. However, Chapter 19 of Title 32 regulates the practice of physical therapy, and Chapter 14 regulates the practice of naturopathy. We need not look to Chapter 13 of Title 32, but find ample authority in Chapter 19—Physical Therapy—for our decision.

A.R.S. § 32–1421 excludes physical therapy from the operation of Chapter 13 in the following language:

"§ 32–1421. Acts and persons not affected by chapter

This chapter shall not be construed to apply to or inhibit:

"1. Any person furnishing medical assistance in case of an emergency.

2. The domestic administration of family remedies.

3. The practice of religion or treatment by prayer exclusively.

4. The lawful practice of podiatry, chiropractic, dentistry, being a dispensing optician, *naturopathy,* nursing, optometry, osteopathic physicians and surgeons, pharmacy and *physical therapy.*

5. Any student intern or resident while in the course of taking an approved hospital internship or residency training program provided he shall comply with the applicable registration provisions of this chapter and pay the fees required therefor.

6. Any person acting at the direction or under the supervision of either a doctor of medicine or under the supervision of one included in the paragraphs numbered 7 or 8 of this section, so long as he is acting in his customary capacity, not in violation of any statute, and does not hold himself out to the public generally as being authorized to practice medicine." (emphasis added)

However, in Chapter 19 of Title 32 we find that A.R.S. § 32–2001 defines physical therapy as follows:

"§ 32–2001. Definitions

In this chapter, unless the context otherwise requires:

1. 'Physical therapy' means the treatment of a bodily or mental condition by the use of physical, chemical or other properties of heat, light, sound, water or electricity, or by massage and active and passive exercise, prescribed or authorized by a licensed physician, dentist or podiatrist, but does not include the use of roentgen rays and radium for diagnostic and therapeutic purposes or the use of electricity for surgical purposes, including cauterization.

2. 'Physical therapist' means a person who practices physical therapy.

3. 'Board' means the board of physical therapy examiners. As amended Laws 1974, Ch. 75, § 1."

It cannot be disputed that the treatments given to the Sanfilippos consisting of diathermy, ultra-sonic sonation, microthermy, hot fomentation, and intermittent motorized traction were all physical therapy treatments as defined by A.R.S. § 32–2001.

As to the regulation and conduct of physical therapists, A.R.S. § 32–2041 states:

"§ 32–2041. Use of title or designation of physical therapist

A. A person who has received a certificate of registration and is in good standing shall be known as a registered physical therapist.

B. *It is unlawful for any person who does not have a certificate,* or whose certificate has lapsed or has been suspended or revoked, *to practice,* advertise or assume the title of physical therapist, physiotherapist or registered physical therapist, or to use the abbreviation P.T. or R.T. or any other words, letters or figures to indicate that the person using the same is a registered physical therapist.

C. No person shall work as a physical therapy aide, physical therapy attendant or physical therapy assistant except under the supervision of a registered physical therapist. Such an aide, attendant or assistant shall not use the title of physical therapist. As amended Laws 1968, Ch. 127 § 6." (emphasis added)

The physical therapy laws also provide for penalties for violations of the chapter, as noted in A.R.S. § 32-2043:

"§ 32-2043. Violations; penalties

A person is guilty of a misdemeanor punishable by a fine of not less than fifty nor more than three hundred dollars, imprisonment for not less than thirty nor more than ninety days, or both, who:

1. Obtains or attempts to obtain a certificate of registration by fraud, misrepresentation or in any manner other than that prescribed in this chapter.

2. Wilfully makes a false statement relating to any matter in an oath or affirmation required by this chapter.

3. *Violates any provision of this chapter.* As amended Laws 1974, Ch. 75, § 7." (emphasis added)

■ The only exceptions to the licensing requirements for physical therapists and physical therapy assistants are found in A.R.S. § 32-2021:

"§ 32-2021. Persons and activities not required to be licensed

This chapter shall not be construed to:

1. Prohibit a masseur or a masseuse from giving a massage so long as such service is not represented to be physical therapy as defined in this chapter.

2. Authorize a physical therapist to practice medicine, osteopathy, chiropractic, naturopathy or other art of healing.

3. Apply to hot springs or hot baths, and the usual services rendered in the operation thereof so long as such service is not represented to be physical therapy as defined in this chapter. As amended Laws 1968, Ch. 127, § 3."

A reading of these statutes then leads to the conclusion that these unlicensed assistants to Dr. Haag were in violation of A.R.S. § 32-2043 when they gave services in the form of certain treatments to the San-

filippos which were in fact represented to be, and were, physical therapy.

■ Appellants assert that because these unlicensed assistants were supervised by Dr. Haag, a licensed naturopath, their acts should be lawful. We do not doubt that a licensed naturopath in Arizona can perform physical therapy. A.R.S. § 32-1501 defines naturopathy in Arizona to include ". . . all forms of physiotherapy and means a system of treating the abnormalities of the human mind and body by the use of drugless and nonsurgical methods . . ." However, we find no authority in the statutes to allow him to delegate to unlicensed assistants this method of treatment. The Arizona Legislature has seen fit to set out qualifications and licensing requirements for physical therapists (and physical therapy assistants in A.R.S. § 32-2006), and we think it is in the public interest to license this activity. It was testified to at trial that there are many inherent dangers in certain of these physical therapy treatments, including severe burns, tissue damage, and bone damage. Our Legislature has apparently recognized this danger and made provisions for the qualifications necessary and the regulation of physical therapists.

■ It is a general rule that where a person without a license performs an act amounting to the practice of medicine, for instance, he is not relieved of liability by the fact that he performs the act under the supervision of a licensed practitioner. 70 C.J.S. Physicians and Surgeons § 10k, p. 845. By analogy, we think that an unlicensed assistant cannot legally perform physical therapy under the supervision of a licensed naturopath who has that authority by statute.

In the case of People v. Dennis, 271 App.Div. 526, 66 N.Y.S.2d 912 (1946), a state licensed massage operator was convicted of violating the state laws on illegal practice of medicine by giving certain physical therapy treatments under the supervision of a state licensed physical therapist. The licensed physical therapist was

also convicted of aiding and abetting the unauthorized practice of medicine. O'Neill v. Board of Regents, 272 App.Div. 1086, 74 N.Y.S.2d 762 (1947).

Equally important reasons for upholding the trial judge in this case are public policy reasons. Our Legislature has recognized the need to protect the public by requiring licensing in all of the medical services areas. This allows the State, through examining boards, to establish qualifications, including education and practical training, for those persons who practice the various medical services, such as physical therapy and naturopathy. If no licensing were required for physical therapists, then the public would not be protected from the inherent dangers involved when lay persons render this service. In the instant case *Dr. Haag alone* decides what qualifications his assistants need to perform physical therapy treatments. We think it better to allow the State to set those standards through its licensing statutes. And as noted earlier, the fact that the doctor supervises these assistants does not alleviate the problem. See State v. Paul, 56 Neb. 369, 76 N.W. 861 (1898); Magit v. Board of Medical Examiners, 57 Cal.2d 74, 17 Cal.Rptr. 488, 366 P.2d 816 (1961); Newhouse v. Board of Osteopathic Examiners, 159 Cal.App.2d 728, 324 P.2d 687 (1958).

Our State Legislature has acknowledged the need for physical therapy assistants by enacting A.R.S. § 32–2006, but these assistants are still allowed to work *only* under the supervision of a registered physical therapist. The essence of the problem with the practice in Dr. Haag's office is that these assistants have *no* license of any kind in the medical service field. They are not licensed nurses of any variety, not licensed physical therapists, and not licensed assistant physical therapists. Licensing gives the public at least a minimum assurance of the training and moral character required for the performance of physical therapy services.

We find instructive the language of the court in the case of Magit v. Board of Medical Examiners, Cal.App., 14 Cal.Rptr. 716 (1961). The court stated:

" . . . *a person completely unlicensed in the healing arts, with training and character which have been subjected to the scrutiny of his employer only,* should not be permitted to perform such delicate and dangerous functions as the administration of spinal and epidural anesthetics. Such a rule may deprive us of some very competent people, but the risk involved is too great." 14 Cal.Rptr. at 722 (emphasis theirs)

We think the reasoning applies equally well to unlicensed physical therapists. In the Magit case three highly qualified medical doctors, who were not licensed in California, administered anesthetics under the supervision of a licensed anesthesiologist in a hospital. The licensed anesthesiologist was found to be guilty of unprofessional conduct. We agree with the court in the Magit case and find that the activity of these unlicensed assistants to Dr. Haag was such that supervision by Dr. Haag could not relieve them of the responsibility of exercising judgment and skill in the administration of inherently dangerous physical therapy treatments, and therefore they should be prohibited from rendering physical therapy treatments unlicensed by the State as registered physical therapists or physical therapy assistants.

In conclusion, we hold that the practice of hiring untrained and unlicensed assistants and holding them out to the uninformed public as being qualified to perform physical therapy is unlawful due to the fact that the practice of physical therapy without a license violates our state law and our public policy.

Affirmed.

OGG, P. J., and FROEB, J., concur.