ERIC WEBB, A MINOR, BY AND THROUGH HIS NATURAL PARENT AND GUARDIAN, SHAWN WEBB, APPELLANT/CROSS-RESPONDENT, v. CLARK COUNTY SCHOOL DIS-TRICT; AND ROGER PHILLIPS, AN INDIVIDUAL AND AN EMPLOYEE OF CLARK COUNTY SCHOOL DISTRICT, RESPONDENTS/CROSS-APPELLANTS.

No. 51170

October 8, 2009         218 P.3d 1239

*G. Dallas Horton & Associates* and *David L. Thomas, G. Dallas Horton*, and *Monte Hall*, Las Vegas, for Appellant/Cross-Respondent.

*C.W. Hoffman Jr.*, General Counsel, and *Kevin A. Fitzgerald*, Associate General Counsel, Las Vegas, for Respondents/Cross-Appellants.

# OPINION

By the Court, HARDESTY, C.J.:

This appeal arises out of a district court's judgment awarding appellant/cross-respondent Eric Webb, a minor, general and special damages for injuries sustained after Webb's teacher, respondent/cross-appellant Roger Phillips, placed his hand on Webb's chest during a disturbance at school. In this opinion, we address two issues of first impression: (1) whether the Paul D. Coverdell Teacher Protection Act of 2001 is an affirmative defense, and (2) whether expenses for psychological services rendered by an unlicensed person are recoverable as a matter of law.

First, we consider Webb's contention that the Paul D. Coverdell Teacher Protection Act of 2001 is an affirmative defense that must be pleaded or it is waived. Although we dismiss Webb's cross-appeal because he is not an aggrieved party, as required by NRAP 3(A)(a), we nevertheless must consider whether the Coverdell Act is an affirmative defense because respondent/cross-appellant Clark County School District (CCSD) and Phillips argue that the Act affords them immunity, which Webb counters in his combined answering brief on appeal and reply brief on cross-appeal, arguing that CCSD and Phillips waived the Act's protections by failing to raise the defense affirmatively.

In examining this issue, we are required to address the appropriate standard for reviewing a district court's decision regarding whether a defense must be affirmatively pleaded. We conclude that de novo review is appropriate. Reviewing the issue de novo, we employ the test set forth in *Clark County School District v. Richardson Construction*, 123 Nev. 382, 393, 168 P.3d 87, 94 (2007), and conclude that the Coverdell Act is a defense that must be affirmatively pleaded.

While we disagree with the district court's conclusion that the Coverdell Act is not a defense that must be affirmatively pleaded, we affirm the district court's judgment pertaining to liability because we conclude that CCSD and Phillips failed to raise the Coverdell Act in their pleadings, thereby waiving the defense, and the district court's conclusion as to liability is supported by substantial evidence.

Second, we consider CCSD and Phillips' challenge to the district court's damages award for psychological services rendered by David Hopper and for the emotional distress suffered by Webb. We conclude that, as a matter of law, damages for psychological services rendered in Nevada by a person who is not properly licensed in this state are not recoverable. Thus, because Hopper is not a licensed psychologist in Nevada, we reverse the district court's damages award for the psychological services he rendered.

### FACTS AND PROCEDURAL BACKGROUND

On a morning in March 2005, a group of students were awaiting entry at the south entrance of Mannion Middle School, a school that is located in Clark County, Nevada. Webb, an eighth-grade student, was among the group. Phillips, a teacher for CCSD, tried to exit the south doors of Mannion Middle School. As he was exiting, the group of students waiting outside began pushing in an attempt to enter the building. Phillips tried to explain to the group that students were not allowed entry at that time, but some students held onto the door while others placed their feet at the bottom of the door jamb to prevent Phillips from closing it. During his attempt to close the door, Phillips was pushed (from behind) into the edge of the open door. His left shoulder struck it. Phillips stated that when he turned

around, he saw Webb holding onto his friend's backpack, pushing his friend into Phillips. Apparently observing Phillips turn around, the group became quiet and moved away from Phillips and Webb. Phillips then placed his hand on Webb's chest and stated, "Don't do that! You're going to hurt somebody! That's dangerous! It's unacceptable!"

From this point in time, Phillips' and Webb's recollection of the events differ. According to Phillips, he then removed Webb's hand from the other student's backpack and requested that Webb accompany him to the dean's office.

Distinguishably, Webb testified that Phillips "pushed on his chest, and choked him for what felt like thirty seconds"; Phillips then grabbed Webb "by the nipple and took him to the Dean's office."

The following day, Webb visited his family practitioner, who examined Webb and noted tenderness in his neck and upper torso area, but no objective signs of injury. That doctor prescribed Webb Motrin (an over-the-counter pain reliever) and "reassurance." Webb then sought treatment from a physical therapist, who treated Webb from March 2005 to July 2005. Additionally, Webb was treated by David Hopper for emotional and psychological treatments. Hopper also treated Webb from March 2005 to July 2005. Hopper's bill totaled $5,700.

In September 2005, Webb, through his guardian and parent, filed suit against CCSD and Phillips in district court. The complaint alleged various negligence claims against CCSD and Phillips. CCSD and Phillips filed a joint answer that presented several affirmative defenses; they did not plead the Paul D. Coverdell Teacher Protection Act of 2001.

On November 14, 2006, the case went to arbitration where both parties testified. CCSD and Phillips admitted that Phillips had touched Webb, but contested the damages. The arbitrator concluded that Phillips touched Webb hard enough to cause a bump on Webb's head and a neck sprain. The arbitrator rejected Webb's claim that Phillips choked him because "[t]here was no objective evidence" to support the claim. As a result, the arbitrator found that Phillips was liable for Webb's injuries and that Phillips was not privileged to engage in the contact.

The arbitrator awarded Webb past medical expenses for his treatments with the family practitioner and the physical therapist after a finding that their fees were reasonable and the visits were necessary. With respect to Hopper, however, the arbitrator did not grant the award. The arbitrator specifically found that Hopper was not qualified to perform the services he provided to Webb and that his credentials were not adequate to qualify him as a psychologist, "regardless of the fact that [Hopper] states that he is practicing behavioral medicine, or acting as a psychophysiologist." Because

Hopper's "testimony and practice are not reliable," the arbitrator determined that Hopper's services were neither necessary nor reasonable. Webb did not receive a future damages award because the testimony presented was made in reliance on Hopper's records and recommendations. Nevertheless, the arbitrator awarded Webb a total of $18,250 for physical and emotional/psychological harm. The arbitrator further awarded Webb costs and interests in the amount of $9,776.98.

In December 2006, CCSD and Phillips filed for a trial de novo. On the first day of trial, CCSD and Phillips filed a motion for judgment as a matter of law pursuant to NRCP 52(c). In the points and authorities supporting their motion, CCSD and Phillips alleged that they were immune from negligence liability under the Coverdell Act. In opposition, Webb argued that the Coverdell Act is an affirmative defense that CCSD and Phillips waived because they failed to affirmatively plead it.

The district court accepted the pleadings, the documents that CCSD and Phillips submitted on the Coverdell Act issue (in their NRCP 52(c) motion), and the witness testimony from the trial and found in favor of Webb. The court found that the Coverdell Act applied but Phillips' conduct was unreasonable and fell outside the Act's protection. Particularly, the court stated:

> Based upon the totality of the evidence, . . . Mr. Phillips acted reasonably in removing [Webb]'s hands from [the friend]'s back. The manner in which he next placed his hands on [Webb]'s chest exceeded the force which was reasonable and necessary, given that the potentially dangerous situation had passed. These actions fell below the standard of reasonable care.

Additionally, the court found that Webb was injured as a result of the occurrence. Therefore, after determining that the treatments were reasonable and necessary, the court awarded Webb $6,570 for past medical expenses for his treatments and $5,700 for his expenses incurred with Hopper. The court further found that Webb sustained physical pain and suffering and emotional distress that warranted an additional $15,000 in general damages. The court rejected any award for future general or special damages as too speculative. In total, the district court awarded Webb $27,270.

CCSD and Phillips appealed from the short trial judgment. Thereafter, Webb filed a cross-appeal, challenging the district court's conclusion that the Coverdell Act was not an affirmative defense that CCSD and Phillips had to plead. Pursuant to NRAP 28(h), the caption was modified to reflect that Webb, as plaintiff in the district court, is the appellant/cross-respondent, although Webb filed his no-

tice of appeal after CCSD and Phillips, since Webb was the plaintiff in district court.[2]

## DISCUSSION

On appeal, we address two issues. First, we consider whether the Paul D. Coverdell Teacher Protection Act of 2001 is a defense that must be affirmatively pleaded. Second, we consider whether expenses for psychological services rendered in Nevada by a person who is not a licensed psychologist are recoverable as a matter of law.

### The Coverdell Act as an affirmative defense

#### Webb's standing to appeal

On appeal, Webb challenges the district court's conclusion that the Coverdell Act is not a defense that CCSD and Phillips needed to affirmatively plead. Webb argues that authorities that have interpreted FRCP 8, which is NRCP 8's federal counterpart, have required statutes similar to the Coverdell Act to be affirmatively pleaded. In response, CCSD and Phillips initially argue that Webb's appeal must be dismissed because he is not an aggrieved party. Alternatively, CCSD and Phillips argue that the Coverdell Act is a statutory defense that cannot be waived.

Addressing CCSD and Phillips' initial argument that Webb lacks standing to appeal, we agree and dismiss Webb's appeal because he is not an ''[a]ggrieved [p]arty'' entitled to an appeal under NRAP 3(A)(a), which provides that ''[a]ny party aggrieved may appeal.'' This court has established that a party is ''aggrieved'' if '' 'either a personal right or right of property is adversely and substantially affected by a district court's ruling.' '' *Las Vegas Police Prot. Ass'n v. Dist. Ct.*, 122 Nev. 230, 239-40, 130 P.3d 182, 189 (2006) (citations omitted) (quoting *Valley Bank of Nevada v. Ginsburg*, 110 Nev. 440, 446, 874 P.2d 729, 734 (1994)). In addition, the term ''aggrieved'' means a ''substantial grievance,'' *Esmeralda County v. Wildes*, 36 Nev. 526, 535, 137 P. 400, 402 (1913), which ''includes '[t]he imposition of some injustice, or illegal obligation or burden, by a court, upon a party, or the denial to him of some equitable or legal right.' '' *Las Vegas Police Prot. Ass'n*, 122 Nev. at 240, 130 P.2d at 189 (alteration in original) (quoting *Esmeralda County*, 36 Nev. at 535, 137 P. at 402).

---

[2]The version of NRAP 28(h) in effect at the time this appeal was filed provided, ''[i]n cases involving a cross-appeal, the plaintiff in the court below shall be deemed the appellant for all purposes, unless the parties otherwise agree or the court otherwise orders.''

Because the district court awarded Webb damages in the amount of $27,270, we conclude that Webb was not denied any equitable or legal rights, and we dismiss his appeal as a result. However, while we dismiss Webb's appeal because he is not an "aggrieved party," we must nevertheless consider whether the Coverdell Act is an affirmative defense because CCSD and Phillips argue on appeal that the Act affords them immunity, and Webb responds in his answering/reply brief that CCSD and Phillips cannot avail themselves of the Act's protections because they waived it.

### Standard of review

This court has not expressly stated the applicable standard of review when considering a district court's determination as to whether a defense is an affirmative defense under NRCP 8(c) that must be pleaded. Because we have previously indicated that the rules of statutory interpretation apply to Nevada's Rules of Civil Procedure, *see Moseley v. Dist. Ct.*, 124 Nev. 654, 662 & n.20, 188 P.3d 1136, 1142 & n.20 (2008) (concluding that the "interplay and interpretation of NRCP 25 and NRCP 6 are issues of law that we review de novo" (citing to *State ex rel. PSC v. District Court*, 94 Nev. 42, 44, 574 P.2d 272, 273 (1978))), we conclude that de novo review is appropriate when considering a challenge to a district court's determination that a defense need not be affirmatively pleaded. Accordingly, our review of whether the Coverdell Act is an affirmative defense that must be pleaded is plenary. *See id.*

### The Coverdell Act

Congress enacted the Paul D. Coverdell Teacher Protection Act of 2001 as part of the No Child Left Behind Act. *See* 20 U.S.C. § 6731 (2006). The Coverdell Act immunizes teachers, principals, and other school professionals from liability when they take "reasonable actions to maintain order, discipline, and an appropriate educational environment." *Id.* §§ 6732, 6736. The Coverdell Act applies to both public and private schools in states that receive funds under Chapter 70 of the education title. *Id.* § 6734. Moreover, section 6735(a) of the Coverdell Act provides that the Act preempts any inconsistent state law, but that it does not preempt any state law that provides additional teacher liability protection.

The liability protection provisions of the Coverdell Act are found in section 6736, which reads, in pertinent part:

> [N]o teacher in a school shall be liable for harm caused by an act or omission of the teacher on behalf of the school if—
>
> (1) the teacher was acting within the scope of the teacher's employment or responsibilities to a school or governmental entity;

(2) the actions of the teacher were carried out in conformity with Federal, State, and local laws (including rules and regulations) in furtherance of efforts to control, discipline, expel, or suspend a student or maintain order or control in the classroom or school; [and]

. . . .

(4) the harm was not caused by willful or criminal misconduct, gross negligence, reckless misconduct, or a conscious, flagrant indifference to the rights or safety of the individual harmed by the teacher.

20 U.S.C. § 6736(a) (2006). The Coverdell Act also protects teachers from punitive damage awards, subject to the limitations in section 6736(a). *Id.* § 6736(c).

*Failure to timely raise immunity under the Coverdell Act as an affirmative defense*

NRCP 8(c) provides a list of certain defenses that a party must affirmatively plead. In addition to NRCP 8(c)'s enumerated defenses that must be pleaded is a catchall provision that includes "any other matter constituting an avoidance or affirmative defense." Because NRCP 8(c) does not speak directly to whether a federal law granting immunity from liability qualifies as an affirmative defense, the question then becomes whether the Act falls within NRCP 8(c)'s catchall provision. *See* NRCP 8(c).

This court recently instructed lower courts and litigants on what defenses must be affirmatively pleaded under NRCP 8(c)'s catchall provision, stating, "Allegations must be pleaded as affirmative defenses if they raise 'new facts and arguments that, if true, will defeat the plaintiff's . . . claim, even if all allegations in the complaint are true.'" *Clark Cty. Sch. Dist. v. Richardson Constr.*, 123 Nev. 382, 393, 168 P.3d 87, 94 (2007) (alteration in original) (internal quotations omitted) (quoting *Saks v. Franklin Covey Co.*, 316 F.3d 337, 350 (2d Cir. 2003) (holding that ERISA's preemption of state contract claims in a benefits-due action is an affirmative defense subject to waiver)). Although CCSD and Phillips argue that *Richardson Construction* stands for the proposition that "statutory defenses are not 'true' defenses under NRCP 8(c) and thus are not waived if not affirmatively plead[ed]," we conclude that case does not warrant such a broad interpretation.

In *Richardson Construction*, this court held that a school district could not waive a statutory damages cap on tort damages recovered from a political subdivision of the state; thus, the school district's failure to affirmatively plead it had no effect. 123 Nev. at 389-90,

168 P.3d at 92. Contrary to CCSD and Phillips' claim, *Richardson Construction* stands for the proposition that when Nevada and its political subdivisions are afforded protection from suit under the doctrine of sovereign immunity, and the Legislature waives immunity but limits the amount of liability, then the limitation cannot be waived, even if the defending party fails to raise it. *See id.* Thus, unlike an immunity defense that can be waived if not affirmatively pleaded, if the Legislature has placed a statutory cap on sovereign liability, the award cannot exceed the amount proscribed by the statute. *See id.* Waiver of the immunity defense by failing to affirmatively plead it will still render the sovereign subject to potential liability up to the statutory limit. *See id.* Therefore, we conclude that, under *Richardson Construction*, a party may nevertheless be liable for failing to timely raise an affirmative defense even if that defense is a creature of statute.

Turning to the merits of Webb's argument, upon applying the affirmative defense test set forth in *Richardson Construction*, we conclude that the Coverdell Act is an affirmative defense because the Coverdell Act, in this case, is a new fact and argument that, if true, would defeat Webb's claim. *See Richardson Construction*, 123 Nev. at 393, 168 P.3d at 94.

We determine that after the pleading process was complete, CCSD and Phillips raised a new argument: the Coverdell Act applied to protect Phillips from Webb's simple negligence claim. We determine that if the Coverdell Act would indeed protect Phillips from liability for unreasonably and unnecessarily placing his hand on Webb's chest, the Act would effectively defeat Webb's negligence claim. Hence, we conclude that the Coverdell Act is an affirmative defense. And because CCSD and Phillips failed to assert the Coverdell Act in their answer, we conclude that CCSD and Phillips waived the Coverdell Act's protection.

While the district court concluded that the Coverdell Act was not an affirmative defense and therefore allowed CCSD and Phillips to argue its protections, the district court nonetheless concluded that CCSD and Phillips were liable because the amount of force that Phillips used in touching Webb's chest was excessive and unreasonable. Although the district court was incorrect in concluding that the Coverdell Act was not an affirmative defense, we nevertheless affirm the district court's conclusion as to CCSD and Phillips' liability and damages award for Webb's physical therapy treatments and family practitioner visit. Our affirmance on these points is based on our conclusions that substantial evidence supports the district court's finding that Phillips' contact with Webb was excessive and unreasonable and that CCSD and Phillips failed to present any medical ev-

idence to dispute the physical therapy treatments that Webb received or his visit to the family practitioner. *See Hotel Riviera, Inc. v. Torres*, 97 Nev. 399, 403, 632 P.2d 1155, 1158 (1981) (holding that "[i]f a decision below is correct, it will not be disturbed on appeal even though the lower court relied upon wrong reasons").

### Psychological services rendered by an unlicensed person

CCSD and Phillips challenge the district court's decision to award Webb damages, including treatment fees and emotional distress damages, based on Hopper's psychological treatments, diagnosis, and reports. CCSD and Phillips argue that charges for unlawfully rendered psychology treatments and damages based on unlicensed persons' opinions and records should not be recoverable as a matter of law.

In opposition, Webb responds that the status of Hopper's license is inapplicable because "Dr. Hopper is a licensed drug and alcohol counselor" and "N.R.S. 641.029 [the statute making the unlicensed practice of psychology a gross misdemeanor] specifically states that the *'provisions of this chapter do not apply to: . . . 7. A person who is licensed as a clinical alcohol and drug abuse counselor.'"

Whether damages are legally recoverable is a question of law that this court reviews de novo. *See Vredenburg v. Sedgwick CMS*, 124 Nev. 553, 557, 188 P.3d 1084, 1088 (2008) (stating that pure questions of law are reviewed de novo).

Addressing Webb's argument that the status of Hopper's license is inapplicable because "Dr. Hopper is a licensed drug and alcohol counselor," we conclude that Hopper's license for drug and alcohol counseling is not determinative as to whether the psychological services he rendered should be recoverable as a matter of law. Although Webb is correct in arguing that NRS Chapter 641, which governs psychologists, is inapplicable to drug and alcohol abuse counselors, *see* NRS 641.029(7), NRS 641.029's limitation does not permit drug and alcohol abuse counselors to practice psychology without a psychology license.

NRS 641C.065 defines what constitutes the "[c]linical practice of counseling alcohol and drug abusers" and expressly states that the term does not include "[t]he diagnosis or treatment of a psychotic disorder; or . . . [t]he use of a psychological or psychometric assessment test to determine intelligence, personality, aptitude and interests." NRS 641C.065(2)(a)-(b). Nothing in NRS Chapter 641C permits a drug and alcohol abuse counselor to engage in psychological treatment, hold himself or herself out as a psychologist, or

accept remuneration for unlicensed psychological services rendered. NRS 641.390(1)-(2). If an unlicensed person practices psychology or represents that he or she is a licensed psychologist, or uses any title or description that implies that he or she is a psychologist, he or she is guilty of a gross misdemeanor. NRS 641.440(4)-(5). Based on the plain reading of these statutes, we reject Webb's argument.[3]

Although this court has not previously determined whether unlicensed "professional" fees are recoverable as a matter of law, we are persuaded by the Court of Appeals of Arizona's treatment of analogous issues. In *Sanfilippo v. State Farm Mutual Automobile Insurance Co.*, 535 P.2d 38, 40 (Ariz. Ct. App. 1975), *abrogated by statute as stated in State Farm Mut. Auto. Ins. Co. v. Arizona Bd. of Chiropractic Examiners*, 931 P.2d 426 (Ariz. Ct. App. 1996),[4] the Court of Appeals of Arizona considered whether physical therapy treatments provided by unlicensed assistants violated statutes prohibiting the unlicensed practice of physical therapy and whether an insurance company was obligated to pay fees for services rendered by unlicensed individuals. *Id.* at 39-40. After discussing Arizona's statutes prohibiting and penalizing the unlicensed practice of physical therapy and the associated penalties, the *Sanfilippo* court explained that it was the Legislature's specific intent to set out the qualifications and licensing requirements for physical therapists. *Id.* at 42. Thus, the court determined that it was "in the public interest to license this activity." *Id.* And, the court concluded that in light of the dangers associated with the practice of physical therapy (including "severe burns, tissue damage, and bone damage"), making it illegal for unlicensed people to practice physical therapy furthered the sound public policy of protecting the public. *Id.* at 42-43. In so holding, the court concluded that insurance companies were not obli-

---

[3]Webb also claims that even if Hopper's treatment was illegal because he was unlicensed, Webb should be able to recover for that treatment under the theory of unjust enrichment because Webb is still obligated to pay Hopper for the services that Hopper provided and that Webb would be unjustly enriched otherwise. Aside from the fact that this case does not concern a claim made by Hopper against Webb for recovery of fees, we conclude that Webb's argument is meritless. *See* NRS 641.390(2) (prohibiting any person from offering his services and accepting remuneration for psychological services rendered without a psychology license); *Loomis v. Lange Financial Corp.*, 109 Nev. 1121, 1128, 865 P.2d 1161, 1165 (1993) (concluding that " 'contracts made in contravention of the law do not create a right of action' " (quoting *Vincent v. Santa Cruz*, 98 Nev. 338, 341, 647 P.2d 379, 381 (1982))).

[4]While the status of Arizona law has changed since the case of *Sanfilippo*, 535 P.2d 38, was decided and, in particular, "[p]hysical therapy assistants are no longer licensed," as explained in *State Farm Mut. Auto. Ins. Co. v. Arizona Bd. of Chiropractic Examiners*, 931 P.2d at 426-27, the rationale employed in *Sanfilippo* is only undercut as applied to the particular facts of that case. Distinguishably, Nevada has not changed its statutes regarding the practice of psychology, and therefore, we are persuaded by the rationale employed by the *Sanfilippo* court.

gated to pay for unlawfully rendered services. *Id.* at 40; *see also Loomis*, 109 Nev. at 1127, 865 P.2d at 1164 (barring a real estate company's action to recover a commission on the sale of a piece of property because of the company's "willful evasion of Nevada's real-estate licensing scheme").

We are persuaded that the *Sanfilippo* court reached the correct result on this issue, and that this result is supported by Nevada law and furthers Nevada's public policy. Like the *Sanfilippo* court, we are convinced that when the Legislature enacted NRS Chapter 641 to regulate psychologists, it intended to prevent laypeople from engaging in activities constituting the practice of psychology. The various treatments used by psychologists when providing care to patients with mental illness—and the inherent dangers associated with those treatments—warrant the gross misdemeanor penalty for the unlicensed representation and/or practice of psychology.

Moreover, public policy is furthered by the Legislature's mandate of licensing in the medical field. The licensing requirement, as the *Sanfilippo* court indicated, also permits "the State, through examining boards, to establish qualifications, including education and practical training, for those persons who practice the various medical services," such as psychology. 535 P.2d at 43. Common sense dictates that if the person performing the services lacks the requisite education and training, then it is virtually impossible to determine whether his or her judgment in rendering services is reasonable and whether the services are necessary or even warranted. Therefore, we conclude that it would be contrary to Nevada law and public policy to permit parties to recover for psychological services rendered by unlicensed individuals.

In this case, Webb does not dispute that Hopper is not a licensed psychologist. As the record reflects, Hopper stated in his deposition that he is not licensed as a psychologist in Nevada. To support the award, Webb instead relies on his own medical expert's testimony that Hopper's treatments were reasonable and consistent with the standards of the profession. However, we determine that regardless of whether Hopper's treatment was reasonable and in conformity with the psychology profession, Hopper's actions were in violation of Nevada law if he was indeed practicing psychology.

NRS 641.025 defines the "[p]ractice of psychology" as "the observation, description, evaluation, interpretation or modification of human behavior by the application of psychological principles, methods or procedures to prevent or eliminate problematic, unhealthy or undesired behavior and to enhance personal relationships and behavioral and mental health." The term also encompasses several areas of specialization. *See* NRS 641.025(1)-(10).

In this case, Hopper testified that he conducted electromyography scans (EMGs) on Webb, which Hopper conceded constituted ''biofeedback'' (a specialized area pursuant to NRS 641.025(6)), and that he diagnosed Webb with post-traumatic stress disorder. Hopper examined and evaluated Webb over a four-month period, giving him approximately 26 treatments that totaled $5,700. In light of this evidence, we determine that Hopper engaged in the practice of psychology when he treated Webb. As a result, we reverse the district court's damage award for Hopper's services because Hopper's treatment was illegal and not recoverable as a matter of law. Accordingly, we reverse on this issue.

## CONCLUSION

We conclude that the Coverdell Act is an affirmative defense that must be pleaded or it is waived. In rendering this conclusion, we establish that the appropriate standard in reviewing a district court's decision regarding whether a defense must be affirmatively pleaded is de novo. After applying the test set forth in *Richardson Construction*, 123 Nev. at 393, 168 P.3d at 94, we affirm the district court's judgment with respect to liability because CCSD and Phillips failed to plead the Coverdell Act and the district court's decision regarding liability is supported by substantial evidence.

However, with respect to the district court's award of damages for services rendered by Hopper, we reverse. We conclude that, as a matter of law, a person cannot recover damages for psychological services rendered by a person who is not a licensed psychologist. Because Hopper is not a licensed psychologist, the district court erred by awarding damages for services rendered by Hopper.

Accordingly, we affirm in part and reverse in part the judgment of the district court.

PARRAGUIRRE, DOUGLAS, CHERRY, SAITTA, GIBBONS, and PICKERING, JJ., concur.