129 Nev., Advance Opinion 21

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| ROCK BAY, LLC; AND MAYBOURNE, INC., Petitioners, vs. THE EIGHTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF CLARK; AND THE HONORABLE STEFANY MILEY, DISTRICT JUDGE, Respondents, and REDWOOD RECOVERY SERVICES, LLC; AND ELEVENHOME LIMITED, Real Parties in Interest. | No. 61646 **FILED** APR 04 2013 |

Original petition for writ of prohibition challenging district court orders refusing to quash subpoenas as to petitioners.

Petition denied in part and granted in part.

Gordon Silver and Eric D. Hone and Joel Z. Schwarz, Las Vegas, for Petitioners.

Jolley Urga Wirth Woodbury & Standish and L. Christopher Rose and Brian C. Wedl, Las Vegas, for Real Parties in Interest.

BEFORE PICKERING, C.J., HARDESTY and SAITTA, JJ.

OPINION

By the Court, HARDESTY, J.:

In this opinion, we must determine when discovery of a nonparty's assets is permissible under NRCP 69(a), which permits post-

judgment discovery in aid of execution of a judgment. We conclude that discovery of a nonparty's assets under NRCP 69(a) is not permissible absent special circumstances, which include, but are not limited to, those in which the relationship between the judgment debtor and the nonparty raises reasonable suspicion as to the good faith of asset transfers between the two, or in which the nonparty is the alter ego of the judgment debtor.

## FACTUAL AND PROCEDURAL HISTORY

In March 2011, real parties in interest Redwood Recovery Services, LLC, and Elevenhome Limited (collectively, the judgment creditors) obtained judgments in Florida against Jeffrey Kirsch and various entities that he created throughout the United States (collectively, the judgment debtors).[1] The judgment debtors form limited liability companies with third-party investor funds and purchase pools of residential mortgages, which are then resold for a profit. According to the judgment creditors, the judgments were based on the judgment debtors' unfulfilled promises to pay back promissory notes and obligations owed under a settlement agreement obtained in March 2008 and amended in August 2008.

In addition to the judgment debtor entities, Kirsch created other companies, including Rock Bay, which is a small limited liability company that administers pools of investor-purchased residential mortgages. Rock Bay was organized in Delaware in August 2008, around the time that the amended settlement agreement was signed, and that same year, Kirsch reserved the name and registered Rock Bay as a Nevada company. Rock Bay was listed as "doing business as" American

---

[1]The judgment debtors are not parties to this writ proceeding.

Residential Equities, LLC, which is the name of one of the judgment debtors.

According to the 2010 and 2011 annual lists of officers and directors filed with the Secretary of State, Rock Bay's managing member is Maybourne, which is a Nevada corporation organized in 2008 by the judgment debtors' in-house counsel. Kirsch was listed as an officer of Maybourne, and he signed Rock Bay's 2009 initial list as Maybourne's president and the 2010 annual list as Rock Bay's authorized signatory.

After the Florida litigation began, a series of monetary transfers occurred between Rock Bay and the judgment debtors. In December 2011, when the judgment creditors were unsuccessful in executing their Florida judgments on the judgment debtors' assets, they domesticated the Florida judgments in Nevada. Rock Bay was voluntarily dissolved by Kirsch approximately one week later. Undeterred, the judgment creditors served a subpoena on the Las Vegas accounting firm of McNair & Associates, which performed accounting services for the judgment debtors, Rock Bay, and Maybourne. The subpoena sought all McNair records related to the judgment debtors, Rock Bay, and Maybourne.

Rock Bay and Maybourne moved to quash the McNair subpoena on the ground that they were not parties to the underlying litigation. The district court denied the motion to quash because it found that the relationship between Rock Bay and the judgment debtors raised reasonable suspicion of good faith as to the asset transfers because Kirsch had reserved Rock Bay's name in Nevada, there were multiple transfers of money between Rock Bay and the judgment debtors after the Florida litigation began, and Rock Bay was voluntarily dissolved shortly after the

Florida judgments were registered in Nevada. The district court further found that there was a reasonable inference of a relationship between Maybourne and the judgment debtors because Maybourne has the same address as the judgment debtors, Maybourne's incorporator was in-house counsel for the judgment debtors, and Kirsch was initially registered as a corporate officer of Maybourne. As such, the district court declined to quash the McNair subpoena as to Rock Bay and Maybourne.[2]

The judgment creditors then subpoenaed Rock Bay's financial records from U.S. Bank. Rock Bay filed a motion to quash the U.S. Bank subpoena or, in the alternative, to limit the scope of discovery to the judgment debtors' assets. It argued that the U.S. Bank subpoena sought highly sensitive financial information that was protected from disclosure. The district court denied the motion to quash for the same reasons that it denied the prior motion to quash the McNair subpoena, and it declined to limit the scope of the subpoena because it found that disclosure would not harm Rock Bay. This petition for a writ of prohibition followed.

## DISCUSSION

Writ relief is an "extraordinary remedy, and therefore the decision to entertain a petition lies within the discretion of this court." State v. Dist. Ct. (Jackson), 121 Nev. 413, 416, 116 P.3d 834, 836 (2005). A petitioner bears the burden of "demonstrat[ing] that extraordinary relief is warranted." Valley Health System v. Dist. Ct., 127 Nev. ___, ___, 252 P.3d 676, 678 (2011). A writ of prohibition may be granted when the

---

[2]The subpoena also sought the records related to another nonparty, Sloan Park, LLC, who is not a party to this writ proceeding because the district court quashed the subpoena as it related to Sloan Park's independent records.

district court exceeds its jurisdiction. NRS 34.320. Thus, it is an "appropriate remedy for the prevention of improper discovery." Valley Health System, 127 Nev. at ___ n.5, 252 P.3d at 678 n.5; Wardleigh v. District Court, 111 Nev. 345, 350, 891 P.2d 1180, 1183 (1995).

However, this relief, designed to prevent the district court from acting beyond its authority, is not available when there is a "plain, speedy and adequate remedy in the ordinary course of law." NRS 34.170; Ashokan v. State, Dep't of Ins., 109 Nev. 662, 665, 856 P.2d 244, 246 (1993). Although the right to appeal is generally an adequate legal remedy that would preclude writ relief, Pan v. Dist. Ct., 120 Nev. 222, 224, 88 P.3d 840, 841 (2004), an appeal is not available here because petitioners are not parties to the action below, NRAP 3A(a), and because a post-judgment order denying a motion to quash is not substantively appealable. NRAP 3A(b). Further, while we typically decline to consider writ petitions challenging discovery orders unless certain exceptions exist, Valley Health System, 127 Nev. at ___, 252 P.3d at 678-79, here, the writ is necessary to prevent improper post-judgment disclosure of private information, the issues are novel and important to Nevada jurisprudence, and those issues might avoid appellate review were we not to consider them now. See, e.g., Callie v. Bowling, 123 Nev. 181, 160 P.3d 878 (2007) (explaining when a judgment creditor must proceed against a nonparty in an independent action). Thus, we exercise our discretion to entertain this writ petition.

Discovery of nonparty assets under NRCP 69(a) is permissible in limited circumstances

When interpreting Nevada's Rules of Civil Procedure, we turn to the rules of statutory interpretation. Webb v. Clark County School Dist., 125 Nev. 611, 618, 218 P.3d 1239, 1244 (2009). "Statutory

SUPREME COURT
OF
NEVADA

5

(O) 1947A

interpretation is a question of law that we review de novo." Consipio Holding, BV v. Carlberg, 128 Nev. ___, ___, 282 P.3d 751, 756 (2012). "When a statute is clear and unambiguous, this court gives effect to the plain and ordinary meaning of the words and does not resort to the rules of construction." Id.

NRCP 69(a) provides that "[i]n aid of the judgment or execution, the judgment creditor . . . may obtain discovery from any person, including the judgment debtor, in the manner provided in these rules." Rock Bay and Maybourne concede that this rule permits the judgment creditors to obtain discovery from nonparties, but they argue that such discovery must be limited. To the extent discussed herein, we agree.

As the federal courts have recognized when examining this issue, obtaining post-judgment discovery from nonparties is generally limited to a judgment debtor's assets, and a judgment creditor may not inquire into the nonparties' own assets. See Caisson Corporation v. County West Building Corp., 62 F.R.D. 331, 334 (E.D. Pa. 1974) (holding that inquiries of nonparties under FRCP 69(a) "must be kept pertinent to the goal of discovering concealed assets of the judgment debtor and not be allowed to become a means of harassment" of the nonparties); Burak v. Scott, 29 F. Supp. 775, 776 (D.D.C. 1939) (holding that "a judgment creditor [does not have] any right to . . . require the disclosure of assets of persons other than the judgment debtor" under FRCP 69).[3] However, this

---

[3]NRCP 69(a) is modeled after its federal counterpart, FRCP 69(a)(2), and thus, cases interpreting the federal rule are strongly persuasive. See Executive Mgmt. v. Ticor Title Ins. Co., 118 Nev. 46, 53, 38 P.3d 872, 876 (2002) ("Federal cases interpreting the Federal Rules of Civil Procedure

*continued on next page...*

general rule should not be "applied mechanically." Magnaleasing, Inc. v. Staten Island Mall, 76 F.R.D. 559, 562 (S.D.N.Y. 1977). Because the purpose of post-judgment discovery is to locate the judgment debtor's assets, discovery of a nonparty's assets is permissible if it will lead to discovery of "hidden or concealed assets of the judgment debtor." Caisson Corporation, 62 F.R.D. at 334.

Thus, we conclude that discovery of a nonparty's assets is permissible in certain limited circumstances. These circumstances include, for example, a situation "where the relationship between the judgment debtor and the nonparty is sufficient to raise a reasonable doubt about the bona fides of the transfer of assets between them," Magnaleasing, 76 F.R.D. at 562; see also Alpern v. Frishman, 465 A.2d 828, 829 (D.C. 1983), or where the nonparty is the alter ego of the judgment debtor. See Falicia v. Advanced Tenant Services, Inc., 235 F.R.D. 5, 9 (D.D.C. 2006) (holding that post-judgment discovery of nonparties was permissible in light of evidence suggesting that the nonparties were "mere extensions" and "possible successor entities of a judgment debtor"). We now must determine whether there were certain limited circumstances present in this case to support the district court's denial of the motions to quash the subpoenas seeking discovery of Rock Bay's and Maybourne's assets.

---

*...continued*
'are strong persuasive authority, because the Nevada Rules of Civil Procedure are based in large part upon their federal counterparts.'" (quoting Las Vegas Novelty v. Fernandez, 106 Nev. 113, 119, 787 P.2d 772, 776 (1990))).

<u>Denial of the motions to quash</u>

The judgment creditors subpoenaed all of McNair's records related to the judgment debtors, Rock Bay, and Maybourne. They also subpoenaed Rock Bay's financial records from U.S. Bank. The district court ultimately declined to quash these subpoenas after finding that there was a reasonable inference of a close relationship between the judgment debtors, Rock Bay, and Maybourne.

<u>The McNair subpoena</u>

Rock Bay argues that the district court abused its discretion by declining to quash the McNair subpoena because there was no evidence supporting its conclusion that the asset transfers between Rock Bay and the judgment debtors might not have been in good faith. We disagree.

The district court found that the apparent relationship between Rock Bay and the judgment debtors, and the overall timing of events, raised reasonable suspicion as to the good faith of the asset transfers because Kirsch reserved the name for Rock Bay in Nevada, there was evidence of money being transferred between Rock Bay's and the judgment debtors' bank accounts, and Rock Bay was voluntarily dissolved shortly after the judgment creditors registered their judgment in Nevada. In addition, there was evidence before the district court that Rock Bay was registered as doing business under the name of one of the judgment debtor entities, the signer of Rock Bay's operating agreement was the judgment debtors' in-house counsel, and the form listing Maybourne as the managing member of Rock Bay was signed by Kirsch. We conclude that the relationship established by this evidence is sufficient to raise a reasonable suspicion as to the good faith of the asset transfers between Rock Bay and the judgment debtors. As the district court acted within its

discretion in so concluding, it has not exceeded its authority over Rock Bay such that a writ of prohibition is warranted as to the McNair subpoena.[4]

However, we cannot reach the same conclusion as to Maybourne. As Maybourne points out, there is no evidence that Maybourne ever held or transferred assets with the judgment debtors. In addition, the judgment creditors never argued or established that Maybourne was the judgment debtors' alter ego.[5] Thus, because the judgment creditors did not demonstrate anything about the relationship between Maybourne and the judgment debtors that raises suspicion sufficient to require access to Maybourne's financial records, the district court improperly declined to quash the McNair subpoena as to Maybourne.

### The U.S. Bank subpoena

Rock Bay also argues that the district court exceeded its authority in allowing the U.S. Bank subpoena to endure because in it, the judgment creditors impermissibly sought to acquire highly confidential

---

[4]We decline to consider Rock Bay's argument as to the confidentiality of the records sought by the McNair subpoena because Rock Bay did not argue that the McNair records were confidential and private before the district court. See In re AMERCO Derivative Litigation, 127 Nev. ___, ___ n.6, 252 P.3d 681, 697 n.6 (2011) ("[W]e decline to address an issue raised for the first time" before this court.).

[5]In order to show that Maybourne was the alter ego of the judgment debtors, the judgment creditors would have needed to establish by a preponderance of the evidence that (1) Maybourne is "'influenced and governed by'" the judgment debtors, (2) there is a "'unity of interest and ownership'" between the two such that they are essentially the same company, and (3) "'adherence to the corporate fiction of a separate entity would, under the circumstances, sanction [a] fraud or promote injustice.'" LFC Mktg. Group, Inc. v. Loomis, 116 Nev. 896, 904, 8 P.3d 841, 846-47 (2000) (alteration in original) (quoting Polaris Industrial Corp. v. Kaplan, 103 Nev. 598, 601, 747 P.2d 884, 886 (1987)).

and private financial information.[6]  Although Nevada does not recognize a privilege for financial documents, see NRS Chapter 49 (detailing Nevada's evidentiary privileges), this court has recognized that "public policy suggests that . . . financial status [should] not be had for the mere asking." Hetter v. District Court, 110 Nev. 513, 520, 874 P.2d 762, 766 (1994).  In the context of post-judgment discovery, courts have recognized that a nonparty's privacy interests "must be balanced against the need of the judgment creditor" for the requested information.  Blaw Knox Corp. v. AMR Industries, Inc., 130 F.R.D. 400, 403 (E.D. Wis. 1990).  Thus, a nonparty's financial assets are generally protected where "the information sought was critical to the financial health of the non-party's business and was being requested by a direct competitor." Falicia, 235 F.R.D. at 10.

However, the need of a judgment creditor to examine a nonparty's financial records outweighs the nonparty's privacy interest where, as in this case, there are reasonable doubts as to the good faith of the transfer of assets between the nonparty and the judgment debtor, and the judgment creditor is not a competitor of the nonparty. Id. at 9-10.  In Falicia, the court held that disclosure of a nonparty's bank records was appropriate because there was a "reasonable belief that inspection of the bank records by the [judgment creditor] could lead to the discovery of concealed assets of the judgment debtors." Id. at 10.  After considering the content and recipient of the requested documents, the court concluded that

_____

[6]Maybourne also challenges the U.S. Bank subpoena on the basis of confidentiality and privacy.  However, it appears that Maybourne was not included in the U.S. Bank subpoena, and Maybourne moved to quash only the McNair subpoena.   Therefore, we do not consider Maybourne's argument. See In re AMERCO, 127 Nev. at ___ n.6, 252 P.3d at 697 n.6.

protection of the nonparty's financial information was not warranted because the judgment creditors were not competitors of the judgment debtors. Id.

Similarly, in this case, the judgment creditors are not competitors of Rock Bay. Moreover, the financial records requested from U.S. Bank are relevant and pertain to financial account activity that occurred throughout the underlying litigation, as Rock Bay was not created in Nevada until after the judgment creditors commenced the Florida lawsuit. Therefore, we conclude that the district court did not act in excess of its jurisdiction when it declined to quash the U.S. Bank subpoena.[7]

Accordingly, we grant the petition as to Maybourne because the district court improperly declined to quash the McNair subpoena as to Maybourne. Thus, we direct the clerk of this court to issue a writ of prohibition instructing the district court to quash the McNair subpoena as it pertains to Maybourne. However, we deny the petition as to Rock Bay because the relationship between Rock Bay and the judgment debtors

---

[7]The parties also dispute whether Rock Bay previously rejected a confidentiality agreement. In support of this argument, the judgment creditors rely on a letter their counsel sent to Rock Bay stating that the nonparties had not answered the judgment creditors' request for a proposed confidentiality agreement. However, Rock Bay argues that the proposed agreement was not sufficient, and that the agreements it alternatively proposed were similarly rejected by the judgment creditors. We do not address this issue because it is a question of fact, and it was not raised in the district court. See State v. Rincon, 122 Nev. 1170, 1177, 147 P.3d 233, 238 (2006) ("This court does not act as a finder of fact . . . ."); In re AMERCO, 127 Nev. at ___ n.6, 252 P.3d at 697 n.6.

raises reasonable suspicion as to the good faith of the asset transfers between them, and because no privacy interest will be impacted in a way sufficient to overcome the judgment creditors' interest in discovering any concealed assets.[8]

_____, J.
Hardesty

We concur:

_____, C.J.
Pickering

_____, J.
Saitta

_____

[8]As such, we deny as moot Rock Bay's and Maybourne's petition for rehearing of the order denying their motion for a stay.

SUPREME COURT
OF
NEVADA

(O) 1947A